# IN THE COURT OF APPEALS OF IOWA

No. 14-1120
Filed September 17, 2014

**IN THE INTEREST OF A.A., J.A.,**
**B.S., and B.S.,**
   **Minor Children,**

**M.N, Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher,

District Associate Judge.

Mother appeals from an order terminating her parental rights.

**AFFIRMED.**

Jesse A. Macro Jr. of Gaudineer & George, L.L.P., West Des Moines, for

appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, John P. Sarcone, County Attorney, and Jon Anderson,

Assistant County Attorney, for appellee.

Todd Babich of Babich Goldman, P.C., Des Moines, for father.

M. Kathryn Miller, Des Moines, attorney and guardian ad litem for minor

children.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

On June 24, 2014, the juvenile court entered an order terminating the parent-child relationship between Mary, the mother, and her children A.A., J.A., B.S., and B.S. The court also terminated the parent-child relationship between Jamie, the father, and his children A.A. and J.A. Only Mary appeals the termination order. On appeal, Mary contends there is not sufficient evidence supporting the termination of her parental rights. Mary also contends the court erred in admitting alleged hearsay into evidence over her objection.

We review de novo proceedings terminating parental rights. *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 480-81. Our obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are "no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

Termination of parental rights under Iowa Code chapter 232 (2013) follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has

been established. *Id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *Id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights. *Id.*

The juvenile court terminated Mary's parental rights pursuant to section 232.116(1)(f). As relevant here, to establish this ground for termination, the State was required to prove by clear and convincing evidence "that at the present time the child[ren] cannot be returned to the custody of the child[ren]'s parent[ ] as provided in section 232.102." Iowa Code § 232.116(1)(f)(4); *see In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). A child cannot be returned to the custody of the child's parents under section 232.102 if by doing so the child would remain a child in need of assistance or would be exposed to any harm amounting to a new child in need of assistance adjudication. *See* Iowa Code § 232.102(5)(a)(2). "The threat of probable harm will justify termination, and the perceived harm need not be the one that supported the child's initial removal from the home." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).

We conclude the State proved this ground by clear and convincing evidence. This family has significant history with the Iowa Department of Human Services ("IDHS") predating this case. The present case was initiated in November 2011 when the children were removed from the home due to, among other things, inadequate supervision, concerns of illegal drug use in the home,

and Mary's arrest for domestic assault that involved striking her husband in the head with a hammer in the presence of the children. The children were placed in the temporary legal custody of their maternal great-aunt, where they remained after the children were adjudicated in need of assistance in January 2012. The children were adjudicated in need of assistance on several grounds related to, among other things, continued concerns of illegal drug use, the parents' failure to provide drug tests, the parents' failure to utilize services, and ongoing criminal activity in the house, including the father's drug-related convictions and the mother's convictions for child endangerment and domestic assault.

In October 2012, the State filed a petition to terminate parental rights. At that time, the children had not yet had trial home placements with the mother. Also, the mother had not yet progressed to unsupervised visitation with her children. The service providers reported the supervised visitations with Mary were chaotic; Mary was unable to exercise discipline or supervision over the children. Although the juvenile court found grounds to terminate parental rights, the juvenile court dismissed the petition as to Mary and ordered custody of the children placed with IDHS for the purposes of another planned permanent living arrangement. Under this permanency plan, the children were to be placed with Mary's aunt, the children's great-aunt.

There was a material and substantial change in circumstances since the date of the permanency order. *See In re D.S.*, 563 N.W.2d 12, 14 (Iowa Ct. App. 1997). Mary began actively interfering with the planned permanent living arrangement. In May of 2013, Mary appeared at the children's school, signed in,

and then left with the children without signing out. After dropping the children off at their great-aunt's home, who was not home to receive the children because they were early, Mary contacted IDHS and made a false report of child abuse because the children were home alone. On another occasion, Mary posted remarks on Facebook disparaging the great-aunt and her care of the children. Mary then called the aunt, friends, and family to alert them to the posting. During the rare phone calls Mary had with the children, she spoke inappropriately to them and tried to have them admit they would rather live with Mary than the great-aunt. At the termination hearing, Mary testified she would never be supportive of the permanent living arrangement.

In addition to actively interfering with the children's living arrangements, Mary regressed in other ways. Mary ceased attending therapy in the middle of 2013. When IDHS contacted Mary to request information on her therapy, Mary's reply was "don't contact me with anything other than information as it relates to my children." Mary refused to address the issues leading to removal, including, but not limited to, maintaining relationships that pose a risk to her children. For example, Mary's husband was charged with criminal mischief for events occurring at Mary's home in August 2013. In sum, the circumstances that lead to removal in the first instance continue to exist.

We also conclude termination is in the children's best interests. The children's need for safety and permanency are the "defining elements in a child's best interest." *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). The children have been removed from the mother for twenty-six months. The children's

therapist testified the children need permanency and wish to stay in their current placement. They feel safe in their current environment. In contrast, Mary continues to forego necessary services, including therapy. She undermined the children's relationships and created chaos in their lives. The children need not wait for Mary to become a responsible parent. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting . . . . must be constant, responsible, and reliable.").

We also address Mary's evidentiary issue. Mary argues the juvenile court erred by admitting alleged hearsay into evidence over Mary's objection. We find the evidence was properly admitted in this case. *See In re A.M.H.*, 516 N.W.2d 867, 873 (Iowa 1994); *see also* Iowa Code § 232.99(2) ("All relevant and material evidence shall be admitted.").

For the foregoing reasons, the order of the juvenile court is affirmed.

**AFFIRMED.**