**IN THE COURT OF APPEALS OF IOWA**

No. 18-2099
Filed March 6, 2019

**IN THE INTEREST OF A.Z.,**
**Minor Child,**

**J.G., Father,**
 Appellant.
_____

 Appeal from the Iowa District Court for Polk County, Romonda D. Belcher, District Associate Judge.

 A father appeals the termination of his parental rights to his child.
**AFFIRMED.**

 Ryan R. Gravett of Gravett Law Firm, Urbandale, for appellant father.

 Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

 Erin Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

 Considered by Doyle, P.J., and Mullins and McDonald, JJ.

**DOYLE, Presiding Judge.**

A father appeals the termination of his parental rights to his child, challenging the evidence concerning the grounds for termination and the finding that termination is in the child's best interests. We review his claims de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

The child was born in 2011 and was removed from the mother's care in February 2017 because of the mother's substance abuse. The father also has a history of substance abuse. The following month, the juvenile court adjudicated the child to be in need of assistance.

In the year following the child's removal from the home, the father made some progress in completing the case plan, and the Iowa Department of Human Services (DHS) recommended the father be provided an additional six months of services to work toward reunification with the child. Noting that the father had completed outpatient treatment, was engaging in counseling and continuing care, had secured housing, and was attending visits with the child, the juvenile court granted the father an additional six months to work toward reunification. The court outlined the necessary criteria for having the child returned to his care within that period, which included continued engagement in services, visiting the child, demonstrating sobriety and the ability to meet the child's needs, and completing substance-abuse treatment and following recommendations, including therapy. Unfortunately, the father did not continue to make progress as had been hoped. His visits with the child became "sporadic." The father relapsed and used methamphetamine in June 2018. At a hearing in July, the DHS worker noticed that the father had lost a significant amount of weight and had open sores on his

face. The father lost his job at the end of July and admitted to using methamphetamine around that time.

The State filed a petition to terminate the father's parental rights on July 31, 2018. The father admitted to using methamphetamine the day before the September 2018 termination hearing. At the time of the hearing, the father had not attended therapy in a month and was not taking his prescribed medication. When asked to describe the father's involvement throughout the history of the case, the DHS worker testified:

> I'd say it's pretty sporadic. He has two/three months where he does really well, he attends visits, therapy appointments; and then he has a couple of months when he kind of falls off track, and he relapses; and then we go through a kind of a cycle over and over again.

In a November 2018 order, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(f) and (*l*) (2018).

On appeal, the father first contends the State failed to prove the grounds for termination by clear and convincing evidence. Although the father challenges the grounds for termination pursuant to paragraph (f), he does not address the termination of his parental rights under paragraph (*l*). His failure to make any argument concerning the termination of his parental rights under section 232.116(1)(*l*) waives a challenge to termination under this paragraph. *See In re D.S.*, 563 N.W.2d 12, 15 (Iowa Ct. App. 1997). We need only find termination proper on one ground to affirm. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Accordingly, we may affirm the termination of the father's parental rights under section 232.116(1)(*l*). We note additionally that, with regard to paragraph (f), the

father "does concede that the State met its burden as the facts were on the date of the termination hearing."

The father also contends termination is contrary to the child's best interests. *See In re D.W.*, 791 N.W.2d 703, 706-07 (Iowa 2010) ("If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights."). In making this determination, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 37 (quoting Iowa Code § 232.116(2)). The "defining elements in a child's best interest" are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

The father argues it is in the child's best interests to transfer guardianship and custody to the child's maternal step-grandmother in lieu of terminating his parental rights. *See* Iowa Code § 232.116(3)(a) (stating that the court "need not terminate the relationship between the parent and child if the court finds . . . [a] relative has legal custody of the child"). The record does not support this assertion. As we have noted before, "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). A guardianship does not afford the permanency that adoption provides. *See id.* at 477-78. The record indicates the child has "severe anxiety." The DHS worker testified that the child's anxiety increased her need for permanency: "I think with [the child] and her anxiety, it's

best that she knows where she's going to live forever and have that permanency plan to where [her step-grandmother] can adopt her. That way she knows that's her forever home." The DHS worker further testified the child was doing much better in her placement with the step-grandmother and that making that placement permanent to prevent future disruptions would be in the child's best interests. The record also indicates that preserving the parent-child relationship would be contrary to the child's best interests, with the child reporting she did not want to live with the father and wetting the bed when she "has a visit with [the father] or when [the father] misses a visit."

Because termination is in the child's best interests, we affirm the termination of the father's parental rights pursuant to Iowa Code section 232.116(1)(*l*).

**AFFIRMED.**