**In the Interest of A.S.T. and C.R.T., Minor Children.**

**K.U., Natural Mother, Appellant.**

No. 93–132.

Court of Appeals of Iowa.

Oct. 5, 1993.

Robert J. Rehan, Sioux City, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Kathrine S. Miller–Todd, Asst. Atty. Gen., Thomas S. Mullin, County Atty., and Dewey P. Sloan, Asst. County Atty., for appellee State.

John C. Polifka, Juvenile Law Center, Sioux City, guardian ad litem.

Considered by DONIELSON, P.J., and SCHLEGEL and HABHAB, JJ.

HABHAB, Judge.

K.U. is the mother and J.T. is the father of C.R.T., born October 16, 1986, and A.S.T., born August 30, 1987. The parents have never married.

In January 1990, the children were adjudicated children in need of assistance pursuant to Iowa Code section 232.2(6)(b) after the mother had advised various parties that she did not want the children anymore and that she would kill the children if someone did not take them. The children were placed in foster care. At the time of the removal, C.R.T. was three years old and A.S.T. was two years old. The children have remained outside of the mother's custody ever since.

The mother suffered from severe psychiatric problems including depression, anxiety and suicidal thoughts. She was also diagnosed as alcohol, amphetamine and cannabis dependent. In addition, the mother had a history of being involved in physically abusive relationships.

In June 1991, the juvenile court held a review hearing and a hearing on the mother's motion to modify the prior dispositional order. At the time of the hearing, the mother was pregnant with her third child. The mother requested, and the father did not object, to the placement of the children with the mother's maternal aunt and uncle. The State and the guardian ad litem agreed. The juvenile court modified the dispositional order and placed custody of the children with the mother's maternal aunt and uncle.

Subsequently, the State filed a petition to terminate the mother's parental rights pursuant to Iowa Code sections 232.116(1)(e) and (g). The State also sought to terminate the father's parental rights pursuant to sections 232.116(1)(d), (e), (g) and (k). In October 1991, following a hearing, the juvenile court terminated the father's parental rights. He did not appeal.

The juvenile court denied the State's request to terminate the mother's parental rights. The juvenile court found that the mother had made progress within the previous six months. The mother had been caring for her new child who was terminally ill. She maintained sobriety and was taking medication to control her depression. The mother agreed to long-term foster care and/or guardianship of the children with her maternal aunt and uncle. The juvenile court continued long-term placement of the children with the maternal aunt and uncle. In February 1992, the juvenile court entered a nunc pro tunc order indicating that placement with the maternal aunt and uncle was to be considered a permanency order pursuant to Iowa Code section 232.104. The mother did not appeal the permanency order.

On May 20, 1992, the mother filed a motion to modify the permanency order. The State and the guardian ad litem resisted the motion. The juvenile court held a hearing on the matter. The mother testified that she wants the opportunity to raise her children. She continued to care, with the help of professional service providers, for her terminally ill child. The service providers testified that the mother has made strides in caring for the child.

In October 1992, the juvenile court entered an order denying the mother's motion to modify. The juvenile court congratulated the mother on the progress she had made and noted her difficult situation. The juvenile court found, however, that it would not be in the best interest of the children to be returned to their mother. The juvenile court noted that the children would be emotionally damaged if the permanency order were changed. The children had become integrated into their present family situation and removal of the children would have a negative impact on their emotional and psychological well-being and development. The juvenile court continued placement. The juvenile court sustained the maternal aunt and uncle's

motion for guardianship and entered an order for concurrent jurisdiction.

The mother filed an application for review of the juvenile court's decision. The district court entered a ruling affirming the juvenile court decision. The district court noted that the mother had made great strides in caring for her one child but adding two more children would create a great deal of stress. The district court agreed with the juvenile court that the children lacked a strong enough foundation to build a relationship with their mother at the present time.

The mother appeals. We affirm.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re S.V.G.*, 496 N.W.2d 262, 263 (Iowa App.1992). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

The mother contends the juvenile court should have modified the permanency order and transferred custody of A.S.T. and C.R.T. to her.

Iowa Code section 232.104(5) (1991) states:

Subsequent to the entry of a permanency order pursuant to this section, the child *shall not* be returned to the care, custody, or control of the child's parent or parents, over a formal objection filed by the child's attorney or guardian ad litem, *unless the court finds by a preponderance of the evidence, that returning the child to such custody would be in the best interest of the child.*

(Emphasis added.) We therefore must determine whether it would be in the best interest of A.S.T. and C.R.T. to return them to the care of their natural mother.

■ We agree with the juvenile court that our responsibility in a modification of a permanency order is to look solely at the best interests of the children for whom the permanency order was previously entered. Part of that focus may be on parental change, but the overwhelming bulk of the focus is on the children and their needs.

■ We note, as the juvenile and district court did, that the mother has made significant progress in improving her life. The evidence shows that K.U., with the help of a number of professional service providers on a daily basis, can care for her terminally ill child. The evidence shows that she wants another chance to parent her other children to demonstrate that she can be a good parent.

However, A.S.T. and C.R.T. have not lived with their mother in over three years. They have been residing with their maternal great aunt and uncle for two years. They were placed there on a permanent basis under Iowa code section 232.104 (1991). There is overwhelming evidence that they view the aunt and uncle as their actual permanent mother and father. They see the aunt and uncle's new son as their brother. The aunt and uncle have followed the juvenile court's previous order and allow contact between A.S.T. and C.R.T. with their mother by telephone, cards and occasional visits when they are in Iowa. However, the children's therapist, Leslie Hoyle, found the children never speak of their natural mother unless directly asked about her. Both boys expressed that they felt their mother needed them to take care of her and her sick baby.

Ms. Hoyle stated in a letter dated August 12, 1992:

As I have continually noted, I am very concerned about [C.R.T.] and [A.S.T.] in terms of permanency planning. It has not been possible to help them resolve some of their issues because of the uncertainty of their future. They have clearly bonded with the [aunt and uncle] and further disruptions in the development process are likely to be quite damaging. More specifically, I would predict that with further moves and lack of stability in their lives, these boys will have significant difficulties in being able to maintain healthy relationships as adults. Their early years have already been marred by such chaos that long term issues with trust and security are sure to continue for these boys. They are at a place now where they are nurtured and encouraged to grow as children. They appear to feel happy, safe, and better

about themselves. Separation from the [aunt and uncle] will surely have a negative impact on these children.

In her testimony at the hearing, Ms. Hoyle stressed the many losses that these children have already faced in their short lives. She felt that to require them to face significant further losses would be devastating to them. Not only would they again have to deal with separation and abandonment issues related to leaving the aunt and uncle, they would also have to deal with sibling separation related to the aunt and uncle's son.

From our de novo review, we find the best interests of A.S.T. and C.R.T. would not be served by transferring care of them to their natural mother. We affirm the juvenile and district court's decision denying the mother's application to modify the permanency order.

**AFFIRMED.**