**IN THE COURT OF APPEALS OF IOWA**

No. 15-0141
Filed July 9, 2015

**IN THE INTEREST OF M.G. AND T.G.,**
**Minor Children,**

**S.H., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, Judge.

The mother of children adjudicated in need of assistance appeals from a permanency review order placing two of her children in the legal custody of their father. **REVERSED AND REMANDED.**

Marshall W. Orsini of Carr & Wright, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, John Sarcone, County Attorney, and Kailyn Heston, Assistant County Attorney, for appellee State.

Erin Mayfield of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

S.H. is the mother of three children who were removed from her care after her paramour assaulted one of her children with a belt. Ultimately, after the receipt of services, the Iowa Department of Human Services (Department) and the children's guardian ad litem recommended the mother's parental rights be terminated. At the close of the permanency review hearing, the juvenile court stated:

> This is a difficult case. Child abuse is a serious matter. And it is difficult to determine when a parent has made the change necessary to make sure that the child abuse doesn't happen again. There's no cookie-cutter way. And that's what I think this case is all about and why we've gotten to this point here today.
> But given the totality of all the information I have in front of me here, I find that both [the mother and her paramour] recognize the seriousness of what took place, that both of them understand that it is child abuse to discipline a child in the manner in which [one of the children] was disciplined, and that it cannot happen again to any of these kids.
> But to recommend termination of parental rights based on disagreements over the level of accountability taken in this case does not meet the burden of proof.

Following the hearing, the juvenile court entered its order finding it was in the youngest child's best interests to be returned to the mother's care within sixty days, but her other two children should be placed in the legal custody of their father, J.G. The mother appeals that placement, asserting (1) the State failed to prove she was offered or received services to correct the circumstance that led to the adjudication, and (2) the juvenile court erred in placing her two other children in the legal custody of their father. Upon our de novo review of the record, we agree with the mother that the court erred in placing the children in the legal

custody of the father and find the issue to be dispositive. We therefore reverse and remand the case to the juvenile court for further proceedings.

### I. Background Facts and Proceedings.

S.H. is the mother of M.G., born in 2006, T.G., born in 2007, and A.W., born in 2010.[1] J.G.[2] is the father of M.G. and T.G., and during the summer months, he and the mother shared physical care of their children. During the school year, M.G. and T.G. were in the mother's physical care with visitation with their father on Wednesdays and every other weekend.

V.W. is the father of A.W. At the time the Department became involved with the family, he was the mother's paramour and lived with the mother and her children.[3] The paramour has a past conviction for child endangerment and a finding of physical abuse by the Department arising out of an incident in 2004.

In July 2013, it was reported T.G. was assaulted with a belt, resulting in bruises on his thighs. The accounts of the incident given by the children identified the paramour as the perpetrator of the abuse. However, the mother and the paramour gave a different account, asserting she assaulted the child not the paramour. The children were then removed from the mother and the paramour's care. Under the supervision of the Department, the juvenile court placed A.W. in the temporary legal custody of a family friend and M.G. and T.G. in the temporary legal custody of their father.

---

[1] The mother also has two older children, O.H., born in 1997, and D.H., born in 1998, who have a different father. D.H. is in her father's legal custody. These children are not at issue in this appeal.

[2] For ease of discussion, we will refer to J.G. as "the father," though we recognize he is not father of all of the mother's children.

[3] For ease of discussion, we will refer to V.W. as "the paramour," though the mother and V.W. are no longer together.

The children were later adjudicated to be children in need of assistance (CINA), and numerous services were offered to the mother and the paramour for reunification with the children. At the time of the permanency hearing held in June 2014, the Department recommended that the mother and the paramour be given a six-month extension to establish permanency for A.W. and that the mother and father be granted concurrent jurisdiction to pursue modification proceedings in district court regarding custody of M.G. and T.G. Following the hearing, the court entered its permanency order finding:

> The children will be able to return to the mother within six months if the following specific factors, conditions and/or expected behavioral changes are made, eliminating the need for the children's removal from the home: [The mother] shall: follow all recommendations set forth in the updated permanency plan . . . ; consistently exercise all visitation and interactions with her children, progressing toward the goal of their being placed in her home; participate in the children's therapy as requested and recommended by the children's therapist(s); demonstrate progress, insight and accountability into the issues that resulted in the removal of her children, and how to prevent such behaviors from reoccurring.

Additionally, the court determined "that the primary permanency goal for the children remain[ed] reunification with their mother under a six-month extension pursuant to Iowa Code section 232.104(2)(b) [(2013)]." The court also granted concurrent jurisdiction to the mother and father to pursue modification proceedings in district court.

Prior to the permanency review hearing scheduled for December 2014, the Department provided its report to the court recommending the court direct the State to file a petition for termination of the mother's parental rights to M.G., T.G., and A.W. The Department's case worker noted the paramour had pled guilty to

child endangerment concerning the belt-assault incident and the mother to providing a false report to the police regarding the incident. The case worker was concerned that it took more than a year for the matter to be resolved and the mother and paramour to own up to what had really happened in the incident, but she also noted the mother's therapist had explained the mother took accountability for the paramour because it was a third strike for him. The case worker noted the mother's semi-supervised visits were scaled back to fully-supervised visits after the worker listened to calls made between the mother and the paramour while the paramour was in jail, explaining it "was clear that [the mother] was physically disciplining [A.W.] during [her] visits" because A.W. said on one of the calls "momma whooped me" and on other calls the mother told A.W. "she was going to 'whoop her.'"[4] The case worker remarked in the report that this was "very concerning to the Department due to the reason these children were removed: physical abuse." Other concerns noted were that the mother had not engaged with M.G. and T.G.'s therapy as directed, had said negative things to the children about their father, and had continued to have "highly manipulative behaviors throughout the life of the case," such as not directly informing assisted housing authorities that the children were not in her care. The case worker concluded the Department could not safely return the children to their mother's care at that time "due to [the mother's] unresolved parenting issues, lack of progress, continued lying, manipulating, criminal thinking, and lack to taking accountability in [M.G. and T.G.'s] therapy sessions."

---

[4] The mother explained she used the word "whooping" to refer to spanking the children with her hand on "their butt."

A permanency review hearing commenced in December 2014 and concluded in January 2015. After hearing all of the evidence, the court at the conclusion of the hearing stated on the record that, in regard to A.W., it was changing the permanency goal to return the child to the mother, explaining:

> It's not going to happen today, . . . because we need a transition time. But I expect that transition to take place over the next sixty days. . . .
>       . . . Obviously, based on my ruling with [A.W.], [The mother's] contact with the child needs to progress rather quickly so that this child can be put in her care within the next sixty days.

Regarding M.G. and T.G., the court stated it was changing their permanency plan to "a transfer of custody" from the mother to the father, noting the father already had "custody of these children and [would continue] to pending his getting a district court order that addresses custody and visitation of parenting time with the mother." As to visitation between the mother and M.G. and T.G., the court stated it saw "absolutely no reason why that visitation cannot be, frankly unsupervised," explaining:

> Let's treat this case for what it is. [The mother and the paramour] are in therapy. I think that therapy shall continue. It needs to continue. But [their] relationships with their children need to be addressed in custody orders in district court, and we need to get out of their lives.
>       But we're not going to get out of their lives until, (a), that's done and, (b), we've had some time for transition and we've had some time for these parents to continue to engage in individual therapy and the mother to continue to engage in therapy with the children's current therapist, the two older ones.
>       . . . .
>       So I want to have a review hearing in sixty days. I've already granted concurrent jurisdiction with regard to the [G.] children . . . so that [the mother and father] can initiate some kind of custody order in district court.

Thereafter, the court entered its permanency review order finding that M.G. and T.G. could not be returned to the mother's care at that time "due to still unresolved issues between the mother and children related to the physical abuse that happened to [T.G.] in the mother's home and the continued effect that has had upon both children." However, the court found A.W.'s return to the mother's care was in that child's best interests. The court ordered A.W. be placed with the mother within sixty days and that M.G. and T.G. be placed in their father's legal custody under the Department's supervision pursuant to Iowa Code section 232.104(2)(d)(2).

The mother now appeals the court's placement of M.G. and T.G. in their father's legal custody, arguing that the State failed to prove it provided to her reasonable services for reunification and that the juvenile court erred in placing M.G. and T.G. in their father's legal custody. Because we find the latter argument dispositive, we do not address her former contention.

### II.  *Scope and Standards of Review.*

We review permanency orders de novo, sorting through both the facts and law and adjudicating rights anew on the issues properly presented on appeal. *In re A.T.*, 799 N.W.2d 148, 150-51 (Iowa Ct. App. 2011). We give weight to the factual findings of the juvenile court, but are not bound by them. *Id.*

### III.  *Discussion.*

The parent-child relationship is constitutionally protected. *See Quilloin v. Walcott*, 434 U.S. 246, 255, (1978); *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972); *State v. Iowa Dist. Ct.*, 828 N.W.2d 607, 615 (Iowa 2013); *In re K.L.C.*, 372 N.W.2d 223, 226 (Iowa 1985). Notwithstanding:

The protection of children is one of the most well-established duties and public policies of the State of Iowa. The State has a duty to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it. Both [the] DHS and the juvenile court have the important function of protecting children who are in need of assistance.

*In re A.M.*, 856 N.W.2d 365, 376 (Iowa 2014) (alterations, internal citations, and quotation marks omitted).

In light of these competing interests, the legislature has directed chapter 232 be "liberally construed to the end that each child under the jurisdiction of the court . . . receive, *preferably in the child's own home*, the care, guidance and control that *will best serve the child's welfare* and the best interest of the state." Iowa Code § 232.1 (emphasis added); *see also A.M.*, 856 N.W.2d at 373. Thus, "[w]e afford a rebuttable presumption that the best interest of a child is served when custody is with the natural parents," *In re N.M.*, 491 N.W.2d 153, 156 (Iowa 1992), and "[w]henever possible the court should permit the child to remain at home." Iowa Code § 232.102(5)(a). Consequently, while "[i]t is the duty of the juvenile court *when necessary to intervene* and remove a child from the care and custody of parents, either temporarily or permanently," the court must first determine

that "continuation of the child in the child's home would be contrary to the welfare of the child, and [it] shall identify the reasonable efforts that have been made." [Iowa Code] § 232.102(5)(b); *see also* [Iowa Code] § 232.102(10)(a) (defining "reasonable efforts"). These determinations, required by law, are essential to the juvenile court's role as the arbiter of both temporary and permanent custody for children in need of assistance.

*A.M.*, 856 N.W.2d at 376.

Following a permanency hearing, a juvenile court has four options:

a. Enter an order pursuant to section 232.102 to return the child to the child's home.

b. Enter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

c. Direct the county attorney or the attorney for the child to institute proceedings to terminate the parent-child relationship.

d. Enter an order . . . to . . .

. . . .

(2) [t]ransfer sole custody of the child from one parent to another parent.

Iowa Code § 232.104(2). However, *prior* to entering a permanency order under section 232.104(2)(d), the State must establish by convincing evidence that the children cannot be returned to their home, among other things. *Id.* § 232.104(3)(c).

Here, the juvenile court ordered A.W. be returned to the mother's care within sixty days, a hybrid of the options found in 232.104(2)(a) and (b). However, it went with the option found in 232.104(2)(d)(2) in regards to M.G. and T.G. without explaining why A.W. could be returned to the mother's care in sixty days but not the other two children.

There is no question the mother initially failed to be honest regarding who struck T.G. However, the mother has since pled guilty to providing false information to law enforcement officials—that she perpetrated the abuse—and admitted it was the paramour that struck T.G. Though the Department is concerned with her using the word "whooping" with the children as a prelude to a possible punishment, there was no evidence that *she* physically abused her

children. Moreover, parents in Iowa have the right to use corporal punishment as a means of correcting their children's misbehavior, circumscribed by the requirements of moderation and reasonableness with the aim of modifying the behavior of the child rather than satisfying the passions of an enraged parent. *See State v. Arnold*, 543 N.W.2d 600, 603 (Iowa 1996). There is no evidence the mother's punishment ever exceeded these boundaries.

The Department noted the mother's "failure" to participate in all three children's therapy sessions; yet, the juvenile court found A.W., the youngest child, should be transitioned into placement with the mother within sixty days, while finding the other two children should be placed in their father's custody. Moreover, the evidence presented at the hearing was that although the mother in 2013 had had one bad therapy session with the children, she had since re-engaged in therapy with the children. Additionally, the court found M.G. and T.G. could have unsupervised visitation with the mother; clearly it did not find the children were in danger in her care. Actually, it appears the court did not have any concerns regarding the mother's parenting, concluding at the close of the permanency review hearing:

> Have [the mother and the paramour's] progress [from the date of the prior permanency hearing] to this point been perfect? No. Should their parental rights be terminated? Absolutely not.
> This came from a serious event that took place not two years ago. Just because it was in 2013 doesn't make it two years ago. Eighteen months ago would be a more accurate description.
> All the indications are is that [the paramour], his discipline of children who are not his own got out of hand, that it got out of hand, I believe, more than once; that the event that occurred in June 2013, leaving bruises, was a serious matter and resulted in serious consequences eventually.
> . . . .

We get into the issue of whether the mother eventually took accountability. She did. We get into parsing terms of taking accountability. And we examine this accountability session that she had with her children [in December of 2013], which she acknowledges didn't go particularly well, but I sure would like to have heard from the therapist with regard to that as well.

Both [the mother and the paramour] are participating in individual therapy. Both . . . have consistently exercised their visitations with the children. [The mother] has attempted to participate in therapy with her children.

We get into the typical communication issues that occur between parents and the Department. We get into the typical situations where we have one side saying attempts were made to communicate and the other saying either I don't know or disagreeing. We have visitations which had progressed to semi-supervised and then were retracted.

. . . .

With regard to [the mother], her visits were pulled back to where she now has one visit a week fully supervised because she may have had [A.W.] in her care on a day or two or three or four or five that she was not supposed to.

I, frankly, don't understand that. We've got a custodian who would certainly be able to address that issue.

We've got another situation where [the mother] was seen at the mall with the child. And, again, I'm not seeing that any harm came from that, and I find her discussion of it credible.

These children, obviously, have a close bond with their mother. . . . We have, in the case of the [G.] children, a father who has been able to care for these children.

We have [the mother and father] who have already been through a custody determination in district court. This court has granted concurrent jurisdiction for that to be modified, and it certainly can be. But I'm seeing no reason why [the mother's] parental rights to these children need to be terminated.

As for [A.W.], again, [the mother], though she wanted to take the blame for abusing one of her children, didn't abuse the child. And we want to terminate her parental rights because of her failure to appropriately take accountability for her actions. That alone is not a ground to terminate someone's parental rights, and that's really what we've been left with here.

[The mother and the paramour], from all I can gather from the evidence that's been presented, don't present any substance abuse issues, don't present any domestic violence issues.

Upon our de novo review of the record, we whole-heartedly agree with the juvenile court's sentiments. The record shows the children are closely bonded

with the mother. M.G. and T.G. have asked to go home—with their mother, where they have resided until the Department became involved with the family.

Although the juvenile court noted custody of M.G. and T.G. had previously been fixed, it opted to transfer that custody to the father in the CINA proceedings. We agree with the mother that under the circumstances of the case and findings of the juvenile court, that transfer was not warranted. This is not to say that a modification cannot take place in district court, should that court determine under the appropriate modification considerations it is necessary, though we take no position one way or another. Moreover, M.G. and T.G. can certainly continue in their father's temporary legal custody until they can be transitioned into the mother's care. However, we agree with the mother the court erred in placing M.G. and T.G. in the father's legal custody, given that the court found A.W. could be returned to the mother's care within sixty days. *See* Iowa Code § 232.104(3)(c).

The State points to Iowa Code section 232.104(2)(6) as a justification for keeping M.G. and T.G. from the mother's care. That section provides:

> Subsequent to the entry of a permanency order pursuant to this section, the child shall not be returned to the care, custody, or control of the child's parent or parents, over a formal objection filed by the child's attorney or guardian ad litem, *unless the court finds by a preponderance of the evidence, that returning the child to such custody would be in the best interest of the child.*

*Id.* § 232.104(6) (emphasis added); *see also In re of A.S.T.*, 508 N.W.2d 735, 737 (Iowa Ct. App. 1993) (discussing same subsection, then numbered 232.105(5)). The juvenile court did not make any express findings as to M.G. and T.G.'s best interests other than termination of the mother's parental rights

was not in their best interests.  Nevertheless, upon our de novo review, we may make the determination concerning best interests.  *See A.S.T.*, 508 N.W.2d at 737.

Here, there is no reason M.G. and T.G. cannot be returned to their mother's care within sixty days like A.W.  We find it is in their best interests to return to her care.

### *IV. Conclusion.*

Because we conclude the juvenile court erred in placing M.G. and T.G. in the father's legal custody under the unique facts and circumstances of this case and find this issue to be dispositive, we remand the case to the juvenile court for further proceedings consistent with this opinion.  We do not address the mother's failure-to-provide-reasonable-services argument, nor do we retain jurisdiction.

**REVERSED AND REMANDED.**