# IN THE COURT OF APPEALS OF IOWA

No. 21-1345
Filed December 15, 2021


**IN THE INTEREST OF E.R. and H.R.,**
**Minor Children,**

**K.R., Father,**
 Appellant.
_____


 Appeal from the Iowa District Court for Dickinson County, David C. Larson, District Associate Judge.


 A father appeals a permanency review order denying his request to modify placement of his two children in a child-in-need-of-assistance proceeding and overruling his application for rule to show cause. **AFFIRMED.**

 Shawna L. Ditsworth, Spirit Lake, until withdrawal, and then Pamela A. Wingert of Wingert Law Office, Spirit Lake, for appellant father.

 Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

 Elizabeth K. Johnson of Johnson Law Firm, Spirit Lake, attorney and guardian ad litem for minor children.

 Michael L. Sandy of Sandy Law Firm, P.C., Spirit Lake, for intervenors-appellees D.L. and B.L.


 Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Fourteen-year-old H.R. and eleven-year-old E.R. were adjudicated as children in need of assistance (CINA) for the second time in spring 2019. Because their mother struggled with substance abuse and their father was largely absent from their lives, the juvenile court transferred guardianship and custody to the maternal grandparents in a permanency order. In a later review of that order, the court denied the father's modification request for sole custody and appointed the grandparents to serve as guardians under Iowa Code chapter 232D (2021). Only the father appeals.[1] We affirm.

## I. Background Facts and Proceedings

This family first came to the attention of the Iowa Department of Human Services in October 2016 due to the mother's substance-abuse and mental-health issues. The children, who were then adjudicated in need of assistance, were placed with their maternal grandparents for more than two years, until the case was closed in January 2018. Just one year later, the mother was arrested on drug-related charges. H.R. and E.R. were again removed from her care in February 2019 and placed with their grandparents. They have lived there since, along with their younger half-sibling on the mother's side.

By stipulation of the parties, the juvenile court issued the second CINA adjudication. Although the father was a part of the proceedings, the primary focus of the adjudication was on the mother whose actions led to the back-to-back removals. Visitation for both parents was left at the department's discretion. The

---

[1] The mother consented to the guardianship and does not appeal. The grandparents joined in the State's response to the father's appeal.

father filed a motion for reasonable efforts in late May, requesting "regular and consistent visitation as well as any therapy or other services that may be recommended" so that he could "reestablish a relationship and bond with [E.R. and H.R.]." He had been absent from their lives since a criminal no-contact order was entered against him in 2013 after he pleaded guilty to harassing the children's mother.

After an uncontested dispositional hearing, the court continued the children's placement with their grandparents. As part of an agreed-upon resolution of the father's motion for reasonable efforts, the court specifically granted the father access to services, including Family Safety, Risk, and Permanency Services; co-parenting; family team meetings; and visitation. While the dispositional order opened the door for the father to reconnect with his children, his visitation rights were limited to "written letters or emails as directed by the children's therapist" and supervised phone calls. The order likewise provided for family therapy but only at the recommendation of the children's therapist. For their part, the grandparents and mother were directed to "encourage the children to have a healthy relationship with [their father]" and "avoid talking negatively about [him] in front of the children."

Several continuances later, a permanency hearing occurred over two days in July and August 2020. The mother, the department, and the guardian ad litem all agreed that placing the children in a guardianship with the grandparents was the best permanency option. The father, on the other hand, sought sole custody. He informed the court that he did not get along with the grandparents and was worried they would interfere with his ability to see the children. He pointed

to his recent efforts of engaging in services and bonding with the children in support of his custody request.

In weighing the options, the juvenile court acknowledged the father had begun strengthening his relationship with the children and had progressed from fully supervised to semi-supervised visits since the dispositional order. But the court echoed the guardian ad litem's concern that the relationship was "too new to know if it will last long-term." In that vein, the court noted that transferring custody would require H.R. and E.R. to change schools and adjust to a new home at the risk of having to move back in with the grandparents. On balance, the court determined that while the father "may be an appropriate placement" for the children, it "would like to see more strength and stability in the parent-child relationship and bonding before moving to full-time placement." To aid in that goal, the court ordered that the father was to have unsupervised visitation according to a set schedule, which included half of Christmas break. As neither parent was ready to resume custody at the time of the hearing, the court established a guardianship with the grandparents under Iowa Code section 232.104(2)(d)(1) (2020).

Shortly after the permanency order was entered, the department moved to modify visitation based on allegations that H.R. had been physically abused by the father when she was younger and had also witnessed his abuse toward her mother.[2] The motion requested that his "visitation be modified to be more

---

[2] Neither of these allegations were confirmed after investigation by child protective services. The child-abuse assessment deemed the children safe, noting "there is very vague information about both allegations and they are alleged to have happened several years ago."

restrictive/supervised" as to both children.  The father resisted and countered with his own motion for modification of the permanency order.  He alleged a substantial change in circumstances had occurred since the last hearing and it was in the children's best interests to be placed in his custody subject to the department's supervision.  He also filed an application for rule to show cause, claiming the grandparents "intentionally and willfully failed to cooperate and facilitate the visitation awarded to [him]" by postponing the start of his Christmas break visitation until Christmas Day.  The grandparents filed a motion to intervene, which the juvenile court granted without objection from the parties.

By the time of the combined permanency review and modification hearing in early May 2021, the only services offered by the department dealt with improving the father's parenting skills and his communication with the grandparents.  Service providers testified there were no concerns about the children's physical safety while in their grandparents' care or during visits with the father.  That being said, the department's case manager felt the children were not "emotionally safe" in the father's care, especially H.R.  She stopped attending visits with the father in the fall of 2020 because, according to a letter from her therapist, she had "severe levels of fear and anxiety at the thought of having to interact with her father now or in the near future."  In contrast, E.R. appeared to be developing a good relationship with the father and regularly attended visits.  But he sometimes returned from visits exhibiting inappropriate behaviors and problems with anger, which his therapist believed was tied to exposure to "adult-contented movies" and "violent video games" at his father's house.  Another cause for concern was the father and grandparents placing E.R. in the middle of their conflicts by arguing and talking

negatively about the other when he was around. Based on the foregoing, the case manager recommended both H.R. and E.R. remain in the guardianship, with visitation for the father at the grandparents' discretion. The children's guardian ad litem, mother, and grandparents joined in this recommendation.

Following the combined hearing, the juvenile court modified the permanency order to restrict the father's visitation with H.R. as requested by the State, appointed the grandparents as guardians of both children pursuant to Iowa Code section 232.104(8)(b), and closed the CINA case. Finally, the court denied the father's motion to modify the permanency order and his application for rule to show cause based on a finding of insufficient evidence. The father now appeals.

## II. Analysis

The father challenges two aspects of the juvenile court's permanency review/modification order—the denial of his request to modify the children's placement from the grandparents' care to his care and the refusal to hold the grandparents in contempt for violating the visitation schedule under the original permanency order. We will address each issue in turn.

### A. Modification of the Permanency Order

We review the denial of a motion to modify a permanency order de novo. *See In re A.S.T.*, 508 N.W.2d 735, 737 (Iowa Ct. App. 1993). Although we give weight to the juvenile court's fact findings, we are not bound by them. *Id.* Our job is "to examine the entire record and adjudicate anew rights on the issues properly presented." *Id.*

The father argues the juvenile court overlooked three developments in the case that warranted a modification of the October 2020 permanency order: (1) his

recent efforts to reestablish a relationship with the children; (2) his ability to provide them with a safe and stable home; and (3) the grandparents' role in allegedly causing his strained relationship with H.R. He claims these changed circumstances supported a finding that continuing placement with the grandparents was not in the children's best interests or, alternatively, that their best interests would be better served in his care.

Unlike the father, the State does not focus on whether there was a change in circumstances justifying a modification of the permanency order. Instead, the State relies on section 232.104(7) and argues "the evidence does not support a finding that placing the children in the custody of their father would be in their best interests and, as such, return was not proper."

The differing standards employed by the parties likely stem from a split in our decisions. *See In re E.G.*, No. 17-1855, 2018 WL 540995, at *2 n.4 (Iowa Ct. App. Jan. 24, 2018) (collecting cases). Some of our recent case law notes that although past cases from the supreme court required a party seeking modification of a dispositional order to establish a material and substantial change in circumstances, section 232.103 was subsequently amended and no longer requires such a showing. *See In re M.M.*, No. 16-0548, 2016 WL 4036246, at *3–4 (Iowa Ct. App. July 27, 2016) (noting "CINA proceedings are creatures of statute" and the "language of the statute is controlling" (citation omitted)). Yet in other instances, our court has upheld the changed-circumstances requirement. *See In re C.C.*, No. 16-1678, 2017 WL 104969, at *1 (Iowa Ct. App. Jan. 11, 2017). Further complicating matters is that although the material-and-substantial-change-in-circumstances standard was initially employed in modifications of dispositional

orders, *see In re Leehey*, 317 N.W.2d 513, 516 (Iowa Ct. App. 1982), *superseded by statute*, 2004 Iowa Acts ch. 1154, § 2, it has since leaked into modifications of permanency orders. *See In re D.S.*, 563 N.W.2d 12, 14–15 (Iowa Ct. App. 1997).

Having reviewed the relevant case law and statutes, we hold that a party seeking modification of a permanency order does not need to establish that a substantial change in circumstances has occurred. The proper focus in this case is on section 232.104(7), which provides that after a permanency order has been entered,

> the child shall not be returned to the care, custody, or control of the child's parent or parents, over a formal objection filed by the child's attorney or guardian ad litem, unless the court finds by a preponderance of the evidence, that returning the child to such custody would be in the best interest of the child.

"[O]ur responsibility in a modification of a permanency order is to look solely at the best interests of the children from whom the permanency order was previously entered." *A.S.T.*, 508 N.W.2d at 737. "Part of that focus may be on parental change, but the overwhelming bulk of the focus is on the children and their needs." *Id.* The juvenile court found it was not in the children's best interests to be placed in their father's custody. After our de novo review of the record, we agree.

No doubt, the father has become more active in the children's lives since the start of the second CINA case. Yet he was still only in the process of building a relationship with them, at least with E.R., when he requested a modification of the permanency order. By the father's own admission, he had not developed the necessary foundation with H.R. for her to be placed in his custody without ongoing court involvement. Because H.R. was estranged from her father in earlier years

and their last interaction occurred in November 2020, we find no support for his claim that modification of her placement would be in her best interests. Although the father blames the grandparents for H.R.'s decision to no longer see him, the record reveals she made that decision out of discomfort and anxiety stemming from past trauma. On this record, the modification requested by the father as to H.R. is not in her best interests. *See In re T.B.*, No. 20-0368, 2020 WL 2988267, at *3 (Iowa Ct. App. June 3, 2020) (recognizing a child should not be forced to restore a "fractured relationship" with an estranged parent).

While the father did maintain a safe home environment and provide for E.R.'s needs during their visits together, the children's therapy reports suggest the parent-child relationship between them remained surface level. The record shows E.R. reported spending more time "watching television and/or playing video games" than spending quality time with the father. Indeed, the father did not know about the various mental-health concerns discussed in those reports, including E.R.'s inability to manage his emotions and exhibiting inappropriate behaviors after returning from visits. Given the children's history of being involved in two CINA cases, we are especially concerned with the therapist's reflection that visits with the father appeared to be hindering E.R.'s progress in therapy. In any event, even if we looked solely at the progress between the father and E.R., it is not in the children's best interests to be separated from each other or their half-sibling, whom they have lived with for most of their lives. *See In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006) (noting a preference to keep siblings together).

By all accounts, the children are doing well in their grandparents' care. They have a safe and stable home, reliable transportation for therapy appointments and

extracurricular activities, and consistent supervision. For these reasons, we affirm the juvenile court's ruling denying the father's request for modification of placement under the permanency order.

### B. Contempt

The father argues the juvenile court erred in finding the grandparents did not commit willful disobedience when they denied him the first half of his court-ordered Christmas break visitation. He urges the court should have found the grandparents in contempt of the permanency order for failing to comply with the visitation schedule in a "willful and deliberate" manner.

In defending the court's refusal to find the grandparents in contempt, the State does not dispute that the father's visitation was to start when the children left school for Christmas break on December 22, and not Christmas Day, which is when the exchange between him and the grandparents occurred. It instead relies on the grandmother's testimony at the permanency review hearing to rebut the father's sole claim of willful and deliberate conduct.

On this point, the juvenile court cited *Bell v. Iowa District Court*, 494 N.W.2d 729, 730 (Iowa Ct. App. 1992), in finding the grandparents' actions did not constitute willful disobedience sufficient to justify a conviction for contempt. In *Bell*, we defined "willful disobedience" as "conduct which is 'intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty.'" 494 N.W.2d at 730 (citation omitted). The person seeking a contempt finding must establish the willful conduct by proof beyond a reasonable doubt. *Id.* Like the juvenile court, we find insufficient evidence to support a contempt finding against the grandparents.

On cross-examination, the father's attorney asked the grandmother, "Would you agree that absent some other agreement with [the father], the judge ordered [he] was to have visitation during the first one-half of Christmas break for the year of 2020?" While the grandmother did agree with the attorney's statement, she explained that she misunderstood the language in the court order, stating, "I kind of thought that meant like starting Christmas Day . . . we could have done an even amount of visitation even if it wouldn't have started when [the father] stated he wanted it." But beyond any misunderstanding, the grandmother testified E.R. had been feeling nervous about spending Christmas break time with the father after an incident involving an inappropriate sexual message the eleven-year-old had written to his older step-sister. According to the grandmother, the father called the police to talk to E.R. as a form of discipline. When she asked E.R. about the message, E.R. was "defensive" and said "it was between him and his dad."

From this testimony, the court could find the grandmother's motive for departing from the visitation schedule was not willful and deliberate. Given the court's broad discretion in deciding whether to hold a person in contempt, we decline to disturb its ruling. *See In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995) (requiring that "unless this discretion is grossly abused, the [trial court's] decision must stand" (alteration in original) (citation omitted)).

Finding no grounds for reversal, we affirm the juvenile court's permanency review order.

**AFFIRMED.**