**IN THE COURT OF APPEALS OF IOWA**

No. 22-1231
Filed October 5, 2022

**IN THE INTEREST OF T.D. and T.D.,**
**Minor Children,**

**A.H., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Black Hawk County, David F. Staudt,

Judge.


　　A mother appeals the denial of her request to terminate the guardianship of

her children.  **AFFIRMED.**


　　Nina Forcier of Forcier Law Office PLLC, Waterloo, for appellant mother.

　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

　　Mark A. Milder of Mark Milder Law Firm, Denver, attorney and guardian ad

litem for minor children.


　　Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

On the brink of having her parental rights to her two oldest children terminated, the mother agreed to a guardianship with the maternal grandmother under Iowa Code section 232.104(2)(d)(1) (2019). Two years later, the mother asked the juvenile court to end the guardianship and return the children to her care. The court denied that request, finding it would not be in the children's best interests. The mother appeals.

I.      **Background Facts and Proceedings**

In May 2018, the mother made a bottle for her two-month-old baby, J.W., and put him in bed with his father. She woke up her two older children,[1] born in 2007 and 2012, before she left for work. A couple of hours after the older children left for school, the father called the mother because J.W. was vomiting blood. The mother met the father at urgent care, where the baby was transferred to a hospital. Once at the hospital, staff discovered J.W. had bilateral subdural hematomas, a right parietal skull fracture, and retinal hemorrhages, along with healing rib and femur fractures. A medical team concluded "the child experienced a non-accidental head trauma (physical abuse)."

The two older children were removed from the mother's care and eventually placed with the maternal grandmother. When J.W. was discharged from the hospital, he was placed into foster care while the Iowa Department of Human Services[2] continued its investigation. Both parents denied knowing the cause of

---

[1] Their father is deceased.
[2] We note the department has since merged with the Iowa Department of Public Health, thus culminating in the Iowa Department of Health and Human

their son's injuries. The mother also initially denied that the father had a criminal history, even though she knew that he had spent seventeen years in prison for abusing an eleven-month-old child. No criminal charges were ever filed, although the department's child abuse assessment ultimately concluded a preponderance of the evidence "point[ed] to [the father] as the person responsible" for the injuries.[3]

The mother stipulated that the two oldest children, along with J.W., should be adjudicated as in need of the court's assistance. As the child-in-need-of-assistance cases progressed, the infant was transitioned from foster care into his maternal grandmother's home, where he has since remained. J.W.'s traumatic brain injuries have left him with permanent cognitive impairment. He is blind, unable to walk or talk, and in need of twenty-four-hour care.

Despite her belief that the father caused their son's injuries, the department received multiple reports that the mother continued her relationship with him. She also periodically tested positive for marijuana. And she had a strained relationship with the oldest child, who wrote a letter in 2018 "requesting not to have visits with her mother." The mother and that child participated in counseling with minimal success. All the child would state is that her mother "has a temper, is domineering, unapproachable, and controlling."

---

Services. *See In re D.B.*, No. 22-0979, 2022 WL 3906768, at *1 n.3 (Iowa Ct. App. Aug. 21, 2022).

[3] A second investigation was opened in November 2018 "after an anonymous report was made claiming [the mother] dropped [the baby] in a carrier . . . and the child fell down the stairs before he was placed in the bed with [the father]." The allegation was not founded because the anonymous reporter "would not step forward," according to a report written by a court-appointed special advocate.

In May 2019, the department recommended that a petition to terminate both parents' rights be filed. The State did so, and a combined permanency and termination hearing was set for October. Meanwhile, the mother secretly gave birth to another baby after hiding her pregnancy from the department. The department learned of the birth and removed that child from the mother's care. Though the department suspected that J.W.'s father was also the father of the new baby, paternity testing showed it was a different man—but one who also had a violent past. Child-in-need-of-assistance proceedings for that child were started around the same time the permanency and termination hearings were set for the three oldest children.

On the day of those hearings, the parties informed the juvenile court they had agreed that the mother would consent to the termination of her parental rights to J.W. and guardianship of the two older children with the maternal grandmother. The court found a guardianship was in the children's best interests, noting they had thrived in the grandmother's care. The court accordingly ordered "pursuant to Iowa Code section 232.104 that a guardianship within juvenile court is established for the minor children." A review hearing was set for September 2020.

By the time of that review hearing, the maternal grandmother had adopted J.W. The mother was still involved in juvenile court proceedings for the youngest child. She continued to use marijuana and associate with questionable individuals. Her relationship with a man who was gang-affiliated led to a drive-by shooting at her home. And she was arrested for operating while intoxicated. All parties agreed the guardianship for the oldest children should be continued.

The mother turned things around in 2021. Permanency in her youngest child's case was deferred, and a trial home visit began in April 2021. An August report to the court noted the mother "has grown into a protective parent and individual that puts the safety and well-being of her child first." That child's case was accordingly closed. Soon after, ahead of the annual review hearing in the oldest children's cases, the mother indicated that she wanted the grandmother's guardianship to end.[4] After a September report from the children's guardian ad litem stated that both children wanted to stay with their grandmother, a hearing was set to determine whether the guardianship should continue.

The mother's oldest child was the first witness to testify at the hearing in February 2022. She explained that she wanted to continue living with her grandmother because she felt safe there. The child testified that her mother is "very judgmental. . . . [S]he just makes everything harder than it has to be." She also said that she would not feel comfortable or safe living with the mother because of the "people she hangs around." The second oldest child did not testify, but he told the guardian ad litem in an updated report before court that he was happy with the way things were.

Because the parties could not present all of their evidence at the hearing in February, the court set another day for mid-March. During that month-long break, the mother "unfriended" the oldest child on Facebook and cut off contact with both children. She still saw them at times because she lives across the street from the

---

[4] It does not appear from our review of the record that the mother ever filed a formal motion to terminate the guardianship, instead expressing her intent to do so in an August motion asking that counsel be appointed to represent her and orally at a hearing in September.

maternal grandmother, but she would only "wave" at them in passing. She testified, "If they're not ready to wave and/or speak back, what am I supposed to do?" The mother also posted on Facebook that she was in a "countdown to California," testifying on the second day of the trial that she wanted to move there at some point.

In July, the juvenile court entered a ruling denying the mother's request to terminate the guardianship. The court made strong credibility findings against the mother, describing her as "deceptive," "untruthful," and "selfish" before concluding:

> Currently the children are thriving under the care of the grandmother. Both are attending school, participating in extracurricular activities and generally behaving themselves as productive young individuals. The [c]ourt has great difficulty in considering as truthful much of the testimony by [the mother]. Throughout the history of this case she has attempted to mislead the [d]epartment . . . , the State and the [c]ourt through her unfamiliarity with the truth. Not only is [the mother] untruthful, her actions belie her statements that she intends to act in the best interest of her children. Most notably to the [c]ourt and most recently is her act of "unfriending or blocking" her daughter on Facebook. It appears to the [c]ourt that the only reason she did so was in retaliation for her daughter's truthful testimony that she did not wish to reside with her mother. Attempting to "get even" with your daughter over a truthful statement is not acting in your child's best interest. Given [the mother's] lack of credibility and her own inappropriate behaviors and actions, the [c]ourt finds that she has not proved more likely than not that returning the children to her care would be in their best interest.[5]

The mother appeals, claiming the court "erred in not dissolving the [g]uardianship as [she] has made substantial changes" since it was established, and "[i]t is in the children's best interests to be returned to" her care.

---

[5] We note the mother does not raise any challenge to the burden of proof applied by the juvenile court.

## II.    Standard of Review

"We review the denial of a motion to modify a permanency order de novo." *See In re E.R.*, 973 N.W.2d 889, 893 (Iowa Ct. App. 2021).  "We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them."  *In re A.S.T.*, 508 N.W.2d 735, 737 (Iowa Ct. App. 1993).

## III.    Analysis

The mother spends much of her petition on appeal challenging the juvenile court's failure to recognize the "measurable changes she has made in her life since 2019 when the guardianship was initially agreed to by the parties."  But a party "seeking modification of a permanency order does not need to establish that a substantial change in circumstances has occurred."  *E.R.*, 973 N.W.2d at 893.  Instead, the proper focus is on section 232.104(7) (2021), which states that after a permanency order is entered,

> The child shall not be returned to the care, custody, or control of the child's parent or parents, over a formal objection filed by the child's attorney or guardian ad litem, unless the court finds by a preponderance of the evidence, that returning the child to such custody would be in the best interest of the child.

As we said in *E.R.*:

> Our responsibility in a modification of a permanency order is to look solely at the best interests of the children from whom the permanency order was previously entered.  Part of that focus may be on parental change, but the overwhelming bulk of the focus is on the children and their needs.

973 N.W.2d at 893–94 (cleaned up).

It's true the mother has made positive changes in her life since the guardianship was established, as the juvenile court recognized in finding that she

"was able to care for the infant well enough that custody could be returned to her."

Yet that does not mean it was in the oldest two children's best interests to be

returned as well. *See, e.g.*, *In re C.W.*, No. 20-1545, 2021 WL 377468, at *2 (Iowa

Ct. App. Feb. 3, 2021) (noting "the ability to care for one child does not equate with

an ability to care for" other children).

On that issue, the mother argues she is "better suited to care for the

emotional, moral, social, and educational needs of the children," pointing to various

factors including her "stricter rules," the older child's absences from school, that

child's caretaking of J.W., and the grandmother's interference with contact

between the mother and children.[6]  But as the court and other professionals

involved in the case pointed out, many of these positions were inconsistent.  For

instance, while the mother insisted the oldest child wanted to stay with the

grandmother because she had more freedom there, the mother also complained

the grandmother forced the oldest child to care for J.W.  As far as the mother's

---

[6] The mother also suggests the juvenile court should have afforded her the constitutional "parental preference" recognized in *In re Guardianship of L.Y.*, 968 N.W.2d 882, 897–98 (Iowa 2022)—a case interpreting Iowa Code section 232D.503.  Trouble is, while the mother raised this argument in her written closing argument, the court did not address it, and she did not file a motion requesting a ruling.  *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.  When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." (citation omitted)).  Although the State concedes error was preserved on the mother's claims, we disagree as to this issue.  *See State v. Bergmann*, 633 N.W.2d 328, 332 (Iowa 2001).  Even if the issue had been raised, "we are ultimately guided by consideration" of the children's best interests.  *In re P.S.*, No. 22-0077, 2022 WL 1234120, at *2 (Iowa Ct. App. Apr. 27, 2022); *accord In re L.H.*, No. 20-1144, 2021 WL 211136, at *2 (Iowa Ct. App. Jan. 21, 2021) ("Even if a statutory preference for placement of a child exists, the placement must still be in the child's best interests.").

contact with the children, in one breath, the mother complained that she was never allowed to see them while in the next she asserted that she saw them every day. Her complaints about the grandmother's caretaking simply rang hollow because, as the juvenile court found, she was "quite dependent" on the grandmother "and her own children for the care of her infant," who she would often drop off with the grandmother.

The grandmother has cared for the children for more than four years. By all accounts, except the mother's, the children are doing very well there. While the oldest child has missed some school because of illnesses and vacations, she is getting mostly good grades and received a student of the month award. Both children were described as mature, intelligent, and happy. *See In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019) (considering these factors and others in examining preferences of minor children). If the mother managed to get the children back in her care, and she followed through on her desire to move to California, they would be separated from J.W. and uprooted from all they know. *See In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006) (noting a preference to keep siblings together).

In the end, we agree with the guardian ad litem's assessment that while the mother "loves her kids fiercely," and they love her back, the mother "is primarily focused . . . on what *she* is missing out on by not having the kids in her care. . . . [H]er own feelings and wishes detract from her ability to recognize that the children are happy and in a good, stable situation."[7] In contrast, according to the guardian

---

[7] The mother objected to admission of the guardian ad litem's reports as hearsay. The juvenile court overruled her objections, finding the reports were admissible

ad litem, the grandmother "has a clear grasp on the reality of the family's situation. She is supportive of [the mother], but she has a deep and abiding understanding for who the children are and what they need. Her focus remains [on] doing what is best for them." We agree and affirm the juvenile court's ruling denying the mother's request to end the guardianship.

**AFFIRMED.**

---

under Iowa Code section 232.104(8), which allows the consideration of all "relevant and material evidence" in a proceeding to modify a permanency order. The mother passively raises the same argument on appeal, but she provides no substantive analysis or cites authority in support of it, so we consider the issue waived. *See* Iowa R. App. P. 6.903(2)(g)(3); *L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa Ct. App. 2013).