# IN THE COURT OF APPEALS OF IOWA

No. 22-1469
Filed November 2, 2022

**IN THE INTEREST OF A.B.,**
**Minor Child,**

**H.S., Mother,**
 Appellant.

_____

 Appeal from the Iowa District Court for Dickinson County, Shawna L.

Ditsworth, District Associate Judge.

 A mother appeals the juvenile court's order of permanency in this child-in-

need-of-assistance proceeding. **AFFIRMED.**

 Samuel L. Lyon of Quail Law, PLC, Spencer, for appellant mother.

 Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

 Elizabeth K. Elsten of Johnson Law Firm, Spirit Lake, attorney and guardian

ad litem for minor child.

 Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

A mother appeals the juvenile court's order of permanency in this child-in-need-of-assistance (CINA) proceeding. She contends the court should have granted her an additional six months to reunify with her child and disagrees with the court's finding a transfer of custody to the father was in the child's best interests. On our de novo review,[1] we concur in the juvenile court's findings and conclusions. We affirm.

A.B. was in the mother's physical care after a 2017 dissolution decree.[2] A.B. is a nine-year-old with several emotional and behavioral challenges who needs "structured routine, stability, [and] consistency with medication management." The mother has been unable to overcome her own substance-abuse issues and adequately attend to her mental- and physical-health needs, rendering her unable to provide A.B. with a safe and stable home.

The department of health and human services (DHHS) became involved with the family in April 2021 because the mother was using methamphetamine while caring for the child; voluntary services commenced.

In July, the mother drove A.B. to Missouri and placed her in the father's care while the mother attempted to deal with her issues.[3] The mother again tested positive for methamphetamine. Additionally, the mother was involved with a partner who used methamphetamine and had a history of domestic violence.

---

[1] In an equity action, our review is de novo. *In re A.S.T.*, 508 N.W.2d 735, 737 (Iowa Ct. App. 1993). We give weight to the juvenile court's findings of fact but are not bound by them. *Id.* "The most important consideration in any CINA case is the best interests of the child." *In re D.D.*, 653 N.W.2d 359, 362 (Iowa 2002).
[2] The dissolution decree was entered without the father's participation.
[3] A.B.'s older brother was living with the father as well.

A CINA petition was filed on July 23. The mother entered into a safety plan with DHHS on August 25, which noted the child was living with the father and would be returning to Iowa over Labor Day weekend. The mother agreed A.B. would reside with the maternal grandparents when the child arrived.

The CINA hearing was held on October 6, and on October 13, A.B. was adjudicated CINA and placed in the custody of the maternal grandparents. The adjudication order noted an interstate compact home study was requested for the father's home in Missouri. The mother was ordered to submit to random drug testing, participate in substance-abuse treatment, and follow the recommendations of her mental-health provider.

The mother continued to struggle with methamphetamine use and was unable to sustain sobriety for more than a month or two. In June 2022, the mother attempted inpatient treatment but remained for just a few days before leaving because she needed medical treatment. However, she did not address her medical issues or reengage with substance-abuse services. From June through the time of the permanency hearing on August 23, the mother and A.B. saw each other only once.[4]

In the meantime, A.B.'s father and his sister and parents have been educated about A.B.'s needs for structure and treatment. The father visited A.B. when in Iowa for court hearings and maintained contact by telephone. A.B. spent spring break with him in April 2022. In May, the father made a motion to modify custody. The father's home study indicated placement with him was a viable

---

[4] The father brought the child from Missouri to visit the mother, who was hospitalized from August 2 to 5 after seeking emergency care.

option.  Services for A.B. are available in Missouri but cannot be put in place unless and until the child resides in the state.

On August 23, a hearing was held to address CINA review and permanency and the father's motions to modify placement and for concurrent jurisdiction.  The mother did not attend.[5]  The caseworker testified at trial that the mother admitted ongoing methamphetamine use both before entering treatment in June 2022 and between leaving treatment in June and the permanency hearing.  The mother also had significant untreated health issues.  She was not actively engaged with service providers and admitted she was not currently able to care for A.B.

The caseworker testified the father's home study had been completed, and she recommended A.B. be placed in the father's custody, stating:

> [W]e do have a father that we do not have any founded abuse reports on.  We do not have any—that we have concerns, but there's no imminent danger of placing her with her father.  There are great supports for [A.B.] in Missouri to help set up with services, with schooling, with, you know, spending the night at grandma's, spending the night at the aunt's, things like that.  We have no grounds to not place her with a parent when we have a parent wanting to take care of their child.
> . . . .
> I have been in really good contact, besides the last month, or so, with [paternal grandmother], who has been a great support, helping with [A.B.].  [Paternal aunt] has also been another great support, you know, helping out, getting to school when she was in Missouri prior.  You know, going to their houses.  The child care part of it.  It takes a village to raise children, and especially one with special needs.  And [the father] definitely has those good supports in place.  It doesn't mean that we don't have concerns about making sure that she gets medication, that she gets therapy, but we had some good discussions with [father and relatives] about the need for her to have those services put in place.

---

[5] The mother's attorney reported she was emotionally unable to attend the hearing upon learning DHHS was no longer recommending reunification with her.  She authorized her attorney to proceed without her presence.

When asked whether the caseworker could recommend granting the mother additional time to seek reunification, she testified A.B. had been out of the mother's custody since July 2021. "Having more time, I don't see that we will be anywhere different than where we are now in six months." The caseworker stated allowing the mother more time "isn't going to do miracles."

The father testified he was willing and able to provide a home for A.B. and arrange for her needs to be met.[6]

In closing statements, the attorney for the State asked that the court grant the petition to modify and order concurrent jurisdiction. The father's attorney noted:

> As much as it might be ideal to be able to do some kind of interim trial visit, with the distance and the Interstate Compact issues, there simply isn't a mechanism; but I think there are enough safeguards in place, and enough progress has been made by my client and his support system to ensure a safe placement of [A.B.] with him in Missouri.

Counsel for the mother objected to changing A.B.'s placement and requested she be granted an additional six months to address her medical and substance-abuse issues.

The child's attorney and guardian ad litem (GAL) had no objection to concurrent jurisdiction but did not recommend placement with the father "until we can ensure that the same level of quality of services would be available elsewhere." The GAL's permanency recommendation was for placement with another parent or suitable family member.

---

[6] The father testified he had been in an accident that resulted in his leg being crushed. He used marijuana medicinally pursuant to a medical marijuana card. He stated he would discuss alternative medications with his prescriber.

After a recess, the court issued its ruling, noting its options at permanency were governed by statute. The court noted that effective July 1, a new subsection created a priority of placement if the child could not be returned to home—the first priority being transfer of legal custody to a parent, unless that option would not be in the child's best interests. *See* Iowa Code § 232.104(2)(d)–(4A) (Supp. 2022). The court found custody could not be returned to the mother, did not believe giving her an additional six months would result in the child being returned to her care, and termination of her parental rights was not in the child's best interests.

The court adopted DHHS's recommendation that legal custody be placed with the father, explaining:

> I think [the father] should be commended for his participation and cooperation with [DHHS]. Living a number of hours away, I am sure that wasn't easy, but [he] has also, in my opinion, addressed all of the concerns that have been brought forth in regards to his home and his ability to care for [A.B.] We have an approved home study from the State of Missouri.

The court noted the father had been involved with the child's medical care from a distance, indicated a genuine care for what was best for the child, had family support available as well as support from human services in Missouri and Iowa. The court noted the father had addressed the GAL's concerns and those raised by the child's therapist regarding the child's need for structure, routine, and regular discipline. The court also noted A.B. "has a relationship and bond with her father as well as her extended family in Missouri" and had previously resided in Missouri. The court commended the maternal grandparents for the "excellent care for [A.B.] during this difficult time in her life."

The court also stated:

> We did hear some new information today regarding the issue with the medical marijuana issue, and that wasn't addressed in the substance abuse evaluation; nor do I believe it was addressed in the home study. I believe that is something that should be addressed by [the father] with your medical doctor regarding appropriate treatment and the use of the medical marijuana, combined with taking care of [A.B.] full-time and what other options that there may be.
>
> So, [father], I am going to include in the court's order that you follow up with your medical doctor, or any appropriate professional, regarding the use of medical marijuana and in providing full-time care for [A.B.] I'm also going to order, and I think this is one of [DHHS's] recommendations, that you do continue with your therapy that you are attending currently once a week. I think the . . . recommendation was that you would follow through with all recommendations of your mental health provider, so I'll adopt that recommendation as well, but just reiterate to you that I think it is important for you to continue with that as you go through this transition time for [A.B.] and in getting her to your home full-time.
>
> The court will also adopt the Father's Motion for Concurrent Jurisdiction and will include that in the court's order as well.
>
> I think the Father's Motion to Modify Custody is essentially moot at this point because the court is entering a permanency order transferring custody of the child to the father. And the order will note that as well.

A written order was filed on August 24. The mother appeals, contending the court should have granted her an additional six months.

A six-month extension of time may be granted under Iowa Code section 232.104(2)(b) if parental rights are not terminated following a permanency hearing. *In re D.P.*, No. 21-0884, 2021 WL 3891722, at *2 (Iowa Ct. App. Sept. 1, 2021). But an extension may be granted only if the court "determin[es] that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (quoting Iowa Code § 232.104(2)(b)). The mother claims she plans to address both her medical and substance-abuse issues going forward. Given the

mother's history of unsuccessful attempts to maintain sobriety and failure to deal with her physical and medical needs, we cannot say it is likely the child could be returned to the mother's care within six months. *See In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (noting we may look to a parent's past actions for information about their future conduct). We agree with the juvenile court's opinion that giving the mother an additional six months will do nothing but delay permanency.

After a permanency hearing the court must make a placement decision for the child. Iowa Code § 232.104(2). When the court does not return the child to the child's home, does not grant an extension, and does not order the institution of termination proceedings, the legislature has determined the first option is "to transfer sole custody of the child from one parent to another parent." *Id.* § 232.104(2)(d). An exception for that placement arises only "[i]f the court finds that custody with either of the child's parents is not in the child's best interests." *Id.* § 232.102(1)(a). The mother seeks to avoid A.B.'s placement with the father based on this exception. While there have been concerns raised, we note the mother placed the child in the father's care when she needed parenting assistance and the child will continue to be under the supervision of the juvenile court. We cannot find placement with the father is *not* in the child's best interests. We affirm.

**AFFIRMED.**