In the Interests of D.S., C.S., L.S., and L.S., Minor Children, B.S., Mother, Appellant.

L.C.J., Father, Appellant.

No. 96–0746.

Court of Appeals of Iowa.

Feb. 26, 1997.

Patricia M. Hulting of Roehrick, Hulting, Blumberg, Kirlin & Krull, P.C., Des Moines, for appellant-mother.

Frank Steinbach, III of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellant-father.

Thomas J. Miller, Attorney General, Kathrine S. Miller–Todd, Assistant Attorney General, John Sarcone, County Attorney, and Jaki L. Livingston, Assistant County Attorney, for appellee-State.

Andrea Kurtz, Des Moines, guardian ad litem for minor children.

Heard by CADY, P.J., and HUITINK, J., and McCARTNEY*, Senior Judge.

HUITINK, Judge.

B.S. and L.C.J. appeal the juvenile court's denial of their petition to modify the case permanency plan adopted by the court concerning their minor children, L.S., C.S., D.S., and L.S. We reverse and remand.

### I. Background Facts and Proceedings.

B.S. is the mother of six children, four of whom are the subject of this appeal: D.S., a boy age eleven, C.S., a boy age nine, L.S., a boy age five, and L.S., a boy age three. L.C.J. is the father of the two youngest sons. The family came to the attention of the Department of Human Services in January 1992 and the case was eventually closed in October 1993. Between April and June of 1994, four referrals concerning child abuse were received by the department. The reports alleged numerous incidents of neglect: that the mother failed to provide adequate medical and developmental care to C.S., a mentally disabled child; that the mother had denied critical care to L.S. who was two years behind in speech and language development; that crack was being smoked in front of the children and three of the children tested positive for the drug; that the family moved frequently and lived in filthy residences; that B.S. left C.S. at a bus stop where he later became lost; and finally, that C.S. had wandered into traffic two months earlier and was struck by a car.

In September 1994, all four children were adjudicated children in need of assistance (CINA) by stipulation of the parties. The parents completed evaluations in December 1994 that concluded the mother functioned mentally in the borderline range and probably suffered from organic brain damage. The father's evaluation indicated that he functioned in the low average range and demonstrated symptoms of anxiety disorder and depressive traits.

At the dispositional hearing held in January 1995, the court adopted the Case Permanency Plan submitted by the State. The plan recommended supervised visits at the discretion of DHS and that the parents submit to random drug testing in addition to completing a parental/psychological evaluation. The children continued placement with their maternal grandmother.

In September 1995, a contested permanency hearing was held. The children's grandmother testified she did not believe her daughter had the ability to handle all the children. She also testified concerning the boys' improvement since they had come to live with her. The school social worker testified that D.S. had made progress since placement with his grandmother. The social worker also did not believe the prognosis for the boys was good if they were returned to their mother. B.S. testified none of the children had been exposed to cocaine, she did not have problems providing the children with the help they needed, and she did not have problems making and keeping appointments. She further expressed the view that she did not have any parenting difficulties before the children were removed from the home, nor did she have problems with drug use.

The juvenile court entered an order in September 1995 concluding the following: reasonable efforts had been made to eliminate the need for removal but the children could not be returned home; termination of the parent-child relationship was not in the best interests of the children at the present time; visitations were to be at the discretion of DHS; and finally, DHS was relieved of its obligation to provide services.

In November 1996, the parents filed a joint application to modify the permanency order requesting DHS be ordered to continue services and to grant visitation.

B.S. had a neuropsychological screening in December 1995 that revealed she was functioning in the borderline range but that no organic disorder was noted. It was also discovered B.S. tested positive for THC in August 1995. The father's December 1995

---

* Senior judge from the Second Judicial District serving on this court by order of the Iowa Supreme Court.

parental evaluation produced findings similar to the 1994 findings but also indicated a willingness on his part to seek help with his parenting skills.

A hearing on the application to modify the permanency order was held on dates in January, February, and March 1996.

The court entered a permanency review order in March 1996 continuing custody with the maternal grandmother. The court noted the following:

> Despite the receipt of extensive services and cooperation with those services, the parents have been unable to integrate what they have learned and are unable to meet the children's special needs.

The order continued the CINA adjudication and granted the parents supervised visitation once a month for four-hour periods to be arranged by DHS.

B.S. and L.C.J. have appealed separately from the juvenile court's order. We will first address the arguments advanced by the mother and then we will consider the father's issues.

### II.  Standard of Review.

Our review of an action arising from CINA proceedings is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the juvenile court, especially when considering the credibility of the witnesses, but we are not bound by these findings. Iowa R.App.P. 14(f)(7).

### III.  Duty to Provide Services.

■ B.S. argues the trial court erred when it did not modify the order relieving DHS of its duty to provide services to the mother. At the August 1995 hearing, the State presented evidence of the mother's organic brain dysfunction that adversely affected her ability to retain information. B.S. contends she presented conflicting evidence demonstrating that she in fact was able to learn and retain information and she had been cooperative with DHS. Furthermore, she emphasizes her recent negative drug tests. B.S. notes the court's September 1995 order failed to explain the rationale for discontinuing services.

B.S. argues she met her burden at the modification hearing to show a substantial change in circumstances. She emphasizes that she introduced evidence of further testing indicating she did not suffer from an organic brain disorder. Furthermore, she introduced testimony from individuals who had worked with her since the last hearing and were encouraged by her ability to learn. Those individuals were also in disagreement with the department's decision to discontinue efforts to assist the mother. B.S. argues the State, on the other hand, introduced little evidence supporting its contention that B.S. cannot profit from further services or that B.S. requires 24–hour supervision in order to parent her children.

The State argues that the district court suspended services based on the mother's likely organicity, her inadequate parenting skills, and her low IQ. These factors presented the risk that B.S. would become overwhelmed as a parent and would rely on the older children to parent the younger children in addition to full-time in-home services. Furthermore, the mother's testimony revealed her lack of insight and persistent denial of the ongoing problems in spite of a long history of abuse and neglect reports. Finally, none of the witnesses testifying that the mother had participated in parenting classes had ever seen the children or had knowledge of the mother's practical application of these skills.

■ The modification of a dispositional order is provided for in Iowa Code section 232.103 (1995). A party seeking a modification of a prior dispositional order must show the circumstances have so materially and substantially changed that a modification is in the best interest of the child. See In the Interest of C.D., 509 N.W.2d 509, 511 (Iowa App.1993).

■ Our primary concern in a proceeding of this nature is the best interests of the children. See In re C.G., 444 N.W.2d 518, 520 (Iowa App.1989) (citing In re Dameron, 306 N.W.2d 743, 745 (Iowa 1981)). We consider the children's long-range as well as immediate interests. Id. The parents' past performance provides insight into this deter-

mination. *Id.* Part of our focus may be on parental change, but the overwhelming bulk of the focus is on the children and their needs. *In the Interest of A.S.T.,* 508 N.W.2d 735, 737 (Iowa App.1993).

We conclude from our de novo review of the record that the mother has met her burden of proof to show a substantial change in circumstances. Test results revealed the presence of low intellectual functioning but were inconclusive on the possibility of organic brain disorder. However, the testimony of individuals who have actually worked with the mother in parenting skills, assertiveness training, and in family therapy indicates ability on behalf of the mother to learn and retain information. After services were discontinued by the September 1995 permanency order, the mother sought assistance on her own accord. The service providers were impressed with her sincerity and participation and further opined that B.S. would benefit from continued services.

The mother has demonstrated progress and a willingness to improve since the last permanency order. The record indicates she has been denied services based on the erroneous assumption that she suffered from an organic brain disorder. Further testing obtained since the entry of the permanency order indicates the contrary. B.S. is entitled to further opportunities in pursuit of reunification with her children.

Furthermore, we do not find the best interests of the children would be compromised by the receipt of additional services by the mother. The children are currently living with the maternal grandmother and are doing well. At this stage in the proceedings, the children can only benefit from their mother's continuing efforts to improve her parenting abilities. Accordingly, we reverse the court's denial of her petition to modify the September 1995 permanency order and we direct DHS to resume its obligation to provide services to B.S.

### IV.   *Father's Objections to the Permanency Plan.*

■     L.C.J. has argued the State failed to provide reasonable services to reunite the family. However, the father's arguments essentially represent a challenge to the September 1995 permanency order rather than a challenge to the March 1995 order denying the petition to modify the permanency order. The September 1995 permanency order relieved DHS of the obligation to provide services. L.C.J. did not appeal this order. Therefore, the principles of res judicata bar his claim. *See In re Marriage of Guyer,* 522 N.W.2d 818, 821 (Iowa 1994) (principles of res judicata preclude court from relitigating issue or claim that has previously been decided). Furthermore, L.C.J. had an obligation to timely challenge the services offered in previous proceedings. *In the Interest of L.M.W.,* 518 N.W.2d 804, 807 (Iowa App. 1994).

For the same reasons, we also reject L.C.J.'s argument that the State failed to show at the permanency hearing his two children cannot be returned to his custody. This appeal is not an appeal of the permanency order but rather is an appeal from the juvenile court's March 1995 denial of the petition to modify the permanency order. L.C.J. has the burden to show the circumstances have so materially and substantially changed that a modification is in the best interests of the child. *See In the Interest of C.D.,* 509 N.W.2d at 511. His focus on the State's efforts or burden of proof in adopting the case permanency plan is misplaced.

■     Although the father's arguments on appeal do not address the appropriate issues pertaining to modification, we find that L.C.J., like B.S., has demonstrated improved efforts since the entry of the permanency order. L.C.J. has attended assertiveness training classes and has shown progress in his parenting skills. His assertiveness class instructor has written a letter on his behalf praising the father's efforts and also recommending services be reinstated and visits expanded. We do not find evidence in the record suggesting that the children's best interests would be jeopardized by the reinstatement of services for L.C.J. Accordingly, we modify the permanency order by directing DHS to resume its obligation to provide services to L.C.J.

### V. Visitation.

B.S. appeals the juvenile court's denial of her request to modify the provision in the permanency order limiting visitation to one four-hour supervised session per month. She argues this arrangement does not permit her to demonstrate her improved ability to parent the children on a long-term basis.

We are unable to determine from the record what the implications are of the future services to be provided to both parents and the corresponding need for expanded visitation. Accordingly, we remand this issue to the juvenile court for reconsideration in light of our decision directing the State to resume services for B.S. and L.C.J.

**REVERSED AND REMANDED.**