# IN THE COURT OF APPEALS OF IOWA

No. 20-0358
Filed May 13, 2020

**IN THE INTEREST OF A.O., L.S., C.S., C.S., A.S., A.C., and A.S.,**
**Minor Children,**

**K.S., Mother,**
　　Appellant,

**A.S., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Worth County, Adam D. Sauer, District Associate Judge.


A mother and father appeal the juvenile court decision finding their children were in need of assistance. **AFFIRMED ON BOTH APPEALS.**


Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, LLP, Charles City, for appellants mother and father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Patrick Rourick, St. Ansgar, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother and father, Ac.S., appeal the juvenile court decision finding their children were in need of assistance (CINA). We conclude the juvenile court properly determined the children should be adjudicated CINA. We also agree the children could not be returned to the parents' care at the time of the dispositional hearing. We concur in the court's placement of the children. We affirm the decision of the juvenile court.

### I.        Background Facts & Proceedings

K.S. is the mother of Al.S., born in 2003; A.O., born in 2004; A.C., born in 2008; An.S., born in 2016; Co.S., born in 2017; Ch.S., born in 2018; and L.S., born in 2019. R.O. is the father of Al.S. and A.O. M.C. is the father of A.C. The father of An.S. is unknown. Ac.S. is the father of Co.S., Ch.S., and L.S. K.S. is married to Ac.S, and these parents had all seven children at issue in their care when the Iowa Department of Human Services (DHS) became involved with the family.[1]

While she was pregnant with L.S., the mother tested positive for methamphetamine. L.S. had symptoms of opiate withdrawal at birth. The mother stated she had been taking five times the recommended dosage of an over-the-counter medication. Social workers visited the home and found it in compete disarray. The home was cluttered with clothes and food, creating a safety concern for the young children. The older children often missed school because they were required to take care of the younger children, including getting up during the night with the younger children. The children had poor hygiene and had not had a bath

---

[1] Any reference to "the parents" is a reference to K.S. and Ac.S. No other father appealed.

in several days. The parents were not meeting the children's medical and dental needs. The children were not up-to-date on their immunizations, and several of them had tooth decay.[2] An.S. required surgery to have twenty-two out of twenty-four teeth capped. The examining dentist described this child's teeth as "grossly decayed" and "close to abscessing." Ch.S. had eight cavities, which required surgical repair.

The children were removed from the parents' care on September 23, 2019. A.C. was placed with M.C., the child's father. The other children were placed in foster care. On November 26, the juvenile court adjudicated the children CINA pursuant to Iowa Code section 232.2(6)(c)(2) (2019).

A dispositional hearing was held on January 13 and February 4, 2020. The mother testified the two oldest children, Al.S. and A.O., should remain in foster care. These children were not attending visitation but did attend court-ordered family therapy sessions with the mother. Al.S. and A.O. told social workers they wanted to be placed with their father, R.O. There was a recommendation that Ac.S. have no contact with Al.S. due to an incident of inappropriate sexual contact. The mother and Ac.S. asked to have the five younger children returned to their care.

A social worker from DHS, Kerri Knudsen, testified the parents needed to make more progress before the children could be returned. She stated the parents needed to have psychological evaluations to assess their parenting abilities. Knudsen noted the parents did not attend all of the children's medical

---

[2] Neither parent asserted a religious exemption as to the vaccinations.

appointments.  In addition, the mother was verbally aggressive to Al.S. and A.O. at visits.  Knudsen recommended these two children be placed with R.O.

The juvenile court entered a dispositional order on February 11, 2020.  The court noted the home was currently clean and safe.  The parents were participating in supervised visitation with the younger children.  The court stated the parents needed to participate in all of the children's medical appointments.  In addition, the parents needed to attend individual counseling in addition to couple's counseling.  The court determined Al.S. and A.O. should be placed with R.O., A.C. should remain in the care of M.C., and the four youngest children should remain in foster care.  The mother and Ac.S. appealed the dispositional order.

## II.    Standard of Review

Our standard of review for CINA proceedings is de novo.  *See In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).  We are not bound by the factual findings of the juvenile court, but we give weight to those findings.  *Id.*  The court's "determinations must be based upon clear and convincing evidence."  *Id.* at 41.  Our primary consideration is the best interests of the children.  *In re D.S.*, 563 N.W.2d 12, 14 (Iowa Ct. App. 1997).

## III.    Sufficiency of the Evidence

The mother and Ac.S. claim there is not clear and convincing evidence in the record to support the CINA adjudication under section 232.2(6)(c)(2).  This provision applies to a child

> Who has suffered or is imminently likely to suffer harmful effects as
> a result of any of the following:
>     . . . .

(2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

Iowa Code § 232.2(6)(c). The phrase "imminently likely" has been liberally construed in CINA cases. *In re L.H.*, 904 N.W.2d 145, 150 (Iowa 2017). CINA proceedings "are designed to prevent probable harm to a child." *Id.* (citation omitted). The term "harmful effects" "pertains to the physical, mental, or social welfare of a child." *Id.* (citation omitted).

We find there is clear and convincing evidence in the record to show the children would likely be harmed by the parents' failure to exercise a reasonable degree of care in supervising the children. The parents' house was in complete disarray when social workers first visited. The parents had not been bathing the children, and the children exhibited poor hygiene. The parents had not been meeting the children's medical needs, as the younger children were not up-to-date on their immunizations. The parents had not been meeting the children's dental needs—two of the children required dental surgery because of tooth decay. Moreover, the older children often missed school because they were required to take care of the younger children. We conclude the juvenile court properly filed a CINA adjudication for the children under section 232.2(6)(c)(2).

## IV. Reasonable Efforts

The mother and Ac.S. assert DHS did not engage in reasonable efforts to avoid continued removal of the children. Although this argument raises the issue of reasonable efforts, the parents do not assert they should have been offered additional or different services than those provided by DHS. Furthermore, the record does not reflect the parents raised the issue before the juvenile court.

Because the parents do not challenge the services they have received, we do not further address this issue. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (finding a parent could not challenge on appeal the services provided when the issue had not been presented to the juvenile court).

### V.      Placement of Children

**A.**      On appeal, the mother claims all seven of her children should be returned to her care. At the dispositional hearing, however, she testified Al.S. and A.O. should remain in foster care. The mother agreed to discontinue visits with these children because of their "rocky" relationship and because she was meeting with them in family therapy sessions. The mother agreed Al.S. and A.O. should remain out of the home. We determine the mother has waived her right to challenge whether Al.S. and A.O. should be returned to the mother's care.. *See In re H.S.*, No. 17-1902, 2018 WL 540998, at *1 (Iowa Ct. App. Jan. 24, 2018) ("[T]he mother cannot be heard on appeal to complain about a ruling she agreed was appropriate."); *see also Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991 (noting a litigant "cannot deliberately act so as to invite error and then object because the court has accepted the invitation").

The mother also claims Al.S. and A.O. should not be placed with their father, R.O., and instead should remain in foster care. Section 232.99(4) states, "When the dispositional hearing is concluded the court shall make the least restrictive disposition appropriate considering all the circumstances of the case." After a dispositional hearing, a child may be placed with "[a] parent who does not have physical care of the child." Iowa Code § 232.102(1)(a)(1). Placing Al.S. and A.O. with their father is less restrictive than placing them in foster care. *See In re E.R.*,

No. 18-1216, 2018 WL 6131924, at *2 (Iowa Ct. App. Nov. 21, 2018) (reviewing levels of restrictiveness).

At the dispositional hearing, Knudsen recommended that Al.S. and A.O. be placed with R.O. She testified R.O. was fully cooperative with DHS, including participating in therapy with the children. He scheduled some appointments for the children and followed through with those. He consistently attended visitation. In the past, there was an allegation of sexual contact between another child in R.O.'s home and Al.S. R.O. confirmed there would be no unsupervised contact between this child and Al.S. and A.O. Al.S. and A.O., who were teenagers, told social workers they wanted to live with R.O. We concur in the juvenile court's decision to place Al.S. and A.O. in the care of R.O., which was the least restrictive appropriate placement.

**B.** The mother asked to have the five younger children returned to her care. As Ac.S. is the father of the three youngest children, he can only advocate for the return of these children. The mother and Ac.S. point out that they have cleaned up the home so it is no longer presents safety hazards for the children. They state they have been involved in the children's medical care and have demonstrated adequate parenting skills.

Knudsen testified she did not recommend returning the children to the care of the mother and Ac.S. at the time of the dispositional hearing. The parents had attended some medical appointments, but Knudsen stated the parents should be attending all of the children's appointments. She stated the parents needed to have psychological evaluations to help assess their parenting abilities. Also, the parents were attending joint therapy and Knudsen had requested they attend

individual therapy. The parents continued to have supervised visitation and had not progressed to semi-supervised or unsupervised visitation.

The juvenile court determined the children should continue to be placed out of the home. The court stated it was concerned about the parents' failure to attend individual therapy in addition to joint counseling and their lack of involvement in attending the children's medical appointments. The court found, "The problems for which the Court became involved have not resolved." We agree with the juvenile court's conclusion. While the parents made progress, they were not yet in a position where the children could be returned to their care.

The juvenile court determined A.C. should continue in the care of the child's father, M.C., while An.S., Co.S., Ch.S., and L.S. should continue in foster care. The mother challenges the placement of A.C. with M.C., stating M.C. was not supporting her relationship with the child. Prior to these juvenile court proceedings, the mother and M.C. had a shared custody arrangement for A.C. At the adjudication hearing on October 21, 2019, the mother stated M.C. was "a great dad."

We determine the children could not be returned to the mother's care at the time of the dispositional hearing. Placing A.C. with his father, who already shared in the care of the child, is the least restrictive appropriate placement. Furthermore, there was no evidence to show M.C. was not providing adequate care of the child. We concur in the court's placement of A.C. with M.C.

We affirm the decision of the juvenile court.

**AFFIRMED ON BOTH APPEALS.**