# IN THE COURT OF APPEALS OF IOWA

No. 20-0684
Filed September 23, 2020

IN THE INTEREST OF A.E.,
Minor Child,

M.S., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for O'Brien County, David C. Larson, District Associate Judge.

A mother appeals a juvenile court decision adjudicating her child to be in need of assistance. **AFFIRMED.**

Scott A. Johnson of Hemphill Law Office, PLC, Spencer, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., Ahlers, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**DANILSON, Senior Judge.**

A mother appeals a juvenile court decision adjudicating her child to be in need of assistance (CINA). The evidence shows it is imminently likely the child will suffer harmful effects from the care provided by those the mother chooses to watch the child. Furthermore, we find the CINA adjudication is in the child's best interests. The child has special needs, and it is important that he receive care commensurate with those special needs. We affirm the decision of the juvenile court.

### I.      Background Facts & Proceedings

M.S., mother, and S.E., father, are the parents of A.E., who was born in 2006. A.E. is a child with special needs. Although he was thirteen years old during the CINA proceedings, he functioned at about the level of an eight-year-old child. On May 23, 2019, A.E. came to school with a nosebleed and stated his mother's friend, S.G., struck him in the nose, causing his bloody nose. The mother agreed to voluntarily work with the Iowa Department of Human Services (DHS).

Within a short period of time, however, the mother was no longer cooperating with DHS. On July 8, the State filed a petition requesting a CINA adjudication for the child. Another incident arose in August, when the child was found two miles away from the home of the daycare provider, T.V. He was in an area of busy traffic. The child was gone from T.V.'s home for about two hours but T.V. had not noticed he was missing. The mother was informed by police officers she should not continue to use T.V. as a daycare provider.

The next day, the mother again left the child in the care of T.V. A DHS worker came to check on the child and waited one hour and twenty-five minutes

for T.V. to answer the door. While waiting, the worker sought the assistance of police officers. The DHS worker was concerned that the child was not being supervised, the door was unlocked so the child could have wandered off again, and there was a fire burning outside the house. The child was removed from the mother's home and placed in foster care.[1]

There was a CINA adjudication on December 30. The court found:

[T]he State has proven by clear and convincing evidence that [the child] has suffered harmful effects as the result of the failure of [the mother] to exercise a reasonable degree of care in supervising [the child] as shown by her choice in care providers and parenting supports such as the daycare provider who was negligent in her supervision of [the child] and such as [S.G.] who physically abused [the child].

The child was adjudicated pursuant to Iowa Code section 232.2(6)(c)(2) (2019). The court also found "continued removal is necessary to avoid imminent risk to [the child's] life or health."

The CINA dispositional order was filed on April 7, 2020. The court stated, "The permanency plan for [the child] is to return home following completion of services for [the child] in a waiver home designed to address his mental health issues and behavioral issues." The court also noted the mother had not yet completed a mental-health assessment "which is necessary to make sure she does not have any unaddressed mental health needs that would create a barrier to returning [the child] to her care." The mother appealed the CINA orders.

---

[1] The juvenile court subsequently ordered that the child could be placed in shelter care or group care due to the child's behavioral problems.

## II.	Standard of Review

Our standard of review for CINA proceedings is de novo.  *See In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).  We are not bound by the factual findings of the juvenile court, but we give weight to those findings.  *Id.*  The court's "determinations must be based upon clear and convincing evidence."  *Id.* at 41.  Our primary consideration is the best interests of the child.  *In re D.S.*, 563 N.W.2d 12, 14 (Iowa Ct. App. 1997).

## III.	Sufficiency of the Evidence

The mother contends there is insufficient evidence in the record to support the CINA adjudication under section 232.2(6)(c)(2).  She states she no longer allows S.G. to be near the child.  She also states she used T.V. as a daycare provider, although police officers told her not to leave the child in T.V.'s care, because she did not have enough time to find a new daycare provider before her next work shift.  The mother asserts that she should not be responsible for the conduct of third-parties who interact with the child.

Section 232.2(6)(c)(2) applies to a child

[w]ho has suffered or is imminently likely to suffer harmful effects as a result of any of the following:
. . . .
(2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

The phrase "imminently likely" has been liberally construed in CINA cases.  *In re L.H.*, 904 N.W.2d 145, 150 (Iowa 2017).  CINA proceedings "are designed to prevent probable harm to a child."  *Id.* (citation omitted).  The term "harmful effects" "pertains to the physical, mental, or social welfare of a child."  *Id.* (citation omitted).

The mother testified S.G. had been her neighbor and was a friend. They were "ride-sharing" because S.G.'s car broke down. On May 23, 2019, S.G. was helping the mother get the child up and ready for school. S.G. admitted striking the child, and there was a founded report of physical abuse of the child by S.G. At the adjudication hearing, the mother testified she did not believe S.G. punched the child. Because the mother does not believe S.G. presents a threat to the child, it is unlikely she would protect the child from further harm by S.G.

Also in May 2019, the mother told school employees she was no longer going to use T.V. as a daycare provider because she was unreliable. The mother continued to have T.V. care for the child, however, while the mother was at work. On August 14, T.V. did not notice when the child was out of T.V.'s home for a period of at least two hours. Police officers told the mother she should no longer use T.V. as a daycare provider, but the mother returned the child to T.V.'s care the next day. On August 15, T.V. again did not provide adequate care, as a DHS worker had to wait one hour and twenty-five minutes for T.V. to answer the door.

We find the mother is responsible for the care the child received from T.V. because the mother was aware in May 2019 that T.V. was an unreliable daycare provider. She testified she continued to use T.V. to provide daycare because "I do believe in giving people a second chance." Then, after the mother was aware of the problem on August 14, and police officers told her to not leave the child in T.V.'s care, the mother still took him to T.V.'s home on August 15.

We conclude the mother was not exercising a reasonable degree of care in supervising the child because she left him in the care of unsuitable caregivers. The evidence shows it is imminently likely the child will suffer harmful effects from

the care provided by those the mother chooses to watch the child. We determine the juvenile court properly adjudicated the child under section 232.2(6)(c)(2). Furthermore, we find the CINA adjudication is in the child's best interests. The child has special needs, and it is important that he receive care commensurate with those special needs. We affirm the decision of the juvenile court.

**AFFIRMED.**