# IN THE COURT OF APPEALS OF IOWA

No. 21-1191
Filed January 12, 2022

**IN THE INTEREST OF P.S.,**
**Minor Child,**

**N.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Clayton County, Linnea M.N. Nicol,

District Associate Judge.


        A mother appeals a permanency order placing sole custody of her child with

the father.  **AFFIRMED.**


        Kevin Stinn of Swartz Law Firm, PLLC, Waukon, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Justin M. Vorwald of Ehrhardt, Gnagy, McCorkindale & Vorwald, Elkader,

attorney and guardian ad litem for minor child.


        Considered by Bower, C.J., Badding, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**CARR, Senior Judge.**

A mother appeals a permanency order placing sole custody of her child with the father. We find there is clear and convincing evidence to show the child cannot be safely returned to the mother's care. Also, an extension of six months is not appropriate because it is unlikely the need for removal would no longer exist at the end of the six-month period. We affirm the decision of the juvenile court.

## I. Background Facts & Proceedings

The mother, N.S., and father, W.S., of P.S., born in 2015, had joint physical care of the child. In June 2019, concerns arose because the child had bruises following parenting time with the father. The Iowa Department of Human Services (DHS) issued a founded report finding the father physically abused the child. The father faced criminal charges relating to the incident. He agreed to not have unsupervised contact with the child. The child was placed in the custody of the mother. The child was adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) (2019).

Subsequently, the mother's conduct caused concern to the juvenile court. The mother was reluctant to permit the child's attendance at supervised visitation. Services were offered to the mother and the father. The father cooperated with all services provided to him. The mother was less receptive and stated she did not understand why she needed to participate in Family Safety, Risk, and Permanency (FSRP) services.[1]

---

[1] On November 22, 2019, the mother filed an application for concurrent jurisdiction in the district court to determine the issue of physical care of the child. The father resisted the application. The request was denied by the juvenile court.

The child was removed from the mother's care on January 24, 2020, because she choked her paramour's son, G.B., who was two years old, causing bruising. The application for removal stated the mother "has shown her fluctuating from calm collected demeanor to fits of rage and anger." The child was placed in the care of the father under the supervision of DHS. The juvenile court found, "[t]he mother's anger management issues and the evidence of physical abuse of [G.B.] . . . amount[ed] to imminent danger." DHS amended its previous report finding the father physically abused P.S. and determined the perpetrator was unknown. The criminal charges against the father were dismissed.

P.S. had adverse reactions to contact with her mother. The juvenile court's August 31 review order stated:

> At the time of the hearing, a [DHS] case manager reports that [the child] continues to have adverse reactions to calls, video chats, and in-person interactions with her mother . . . . The adverse reactions of the child include physical aggression towards siblings, defiance, peeing her pants prior to and following visits, pooping her pants prior to and following visits, and even throwing up in anticipation of a visit. On June 10, 2020, [the child] told . . . her father's girlfriend, on that date that she did not want to have a visit or a phone call with her mother. [The child] reported to the FSRP provider that she did not want to have visits "alone" with her mother, including video chats.

The court noted the mother's resentment toward the father was greater than her concern for the child.[2]

The mother made some progress with services. She and the child began participating in play therapy. The mother began individual therapy. The child also

---

[2] On October 2, 2020, the father filed a motion for concurrent jurisdiction with the district court. The mother resisted the father's motion. The juvenile court granted the motion for concurrent jurisdiction.

participated in art therapy. The mother's visits were changed to monitored rather than fully supervised. In November, the mother made an audio recording of a conversation with the child in which she kept pressing the child to say the child was unsafe in the father's home. The mother told the child she would not be safe unless she told social workers the same thing. DHS changed the mother's visits back to fully supervised. The mother continued to participate in services and in January 2021 monitored visits resumed. The child exhibited behavioral problems, including fecal incontinence, following visits with the mother.

A permanency hearing was held on April 29. At the end of the hearing, the court held the record open until June 1 to permit evidence of co-parenting therapy, which began just before the hearing. A June 1 report by DHS stated, "Since the last court hearing, [the mother] continues to behave in a manner that is manipulative and disregards recommendations by [DHS] and other professionals involved." Following one visit, the child stated the mother yelled at her and this made her nervous and sad.

A permanency order was entered on July 6. The court found the mother "refus[ed] to benefit from the family-centered services that have been provided to her." The court found the mother's conduct was detrimental to the child, stating "Rarely is a child's immediate mental and physical response as understandable or attributable to parental behavior as it is in this case." The court determined the parents' previous joint physical care arrangement was not in the child's best interests. The court concluded the child should be placed in the sole custody of the father, under section 232.104(2)(d)(2).

The mother filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). The State resisted the motion. The motion was denied by the juvenile court. The mother appeals the permanency order placing the child in the sole custody of the father.

## II.      Standard of Review

The juvenile court's decisions in CINA proceedings are reviewed de novo. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). We are not bound by the factual findings of the juvenile court, but we give weight to those findings. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). The court's "determinations must be based upon clear and convincing evidence." *Id.* at 41. Our primary consideration is the best interests of the child. *In re D.S.*, 563 N.W.2d 12, 14 (Iowa Ct. App. 1997).

## III.      Discussion

Section 232.104(2) provides:

> After a permanency hearing the court shall do one of the following:
> a. Enter an order pursuant to section 232.102 to return the child to the child's home.
> b. Enter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.
> c. Direct the county attorney or the attorney for the child to institute proceedings to terminate the parent-child relationship.
> d. Enter an order, pursuant to findings required by subsection 4, to do one of the following:
>      . . . .
>      (2) Transfer sole custody of the child from one parent to another parent.
>      . . . .

For the options in subsection 232.104(2)(d), the court must make findings as provided in subsection 232.104(4), that convincing evidence exists showing:

a. A termination of the parent-child relationship would not be in the best interest of the child.
b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
c. The child cannot be returned to the child's home.

The mother first contends there is not sufficient evidence in the record to show the child could not be safely returned to her care. She points out that she has joint physical care of another child, C.P., who is not involved in this case. The mother asserts there is insufficient evidence to show the child's behavioral problems were caused by contact with her.

The child cannot be safely returned to her mother's home under an arrangement for joint physical care as requested by the mother due to her continued anger issues, her inappropriate behavior, and her inability or unwillingness to see how her actions cause emotional stress and trauma to the child. At the time of the permanency hearing, the mother continued to deny she had issues with anger despite evidence to the contrary and she continued to minimize her inappropriate behaviors. The mother's anger management problems became apparent when she choked her paramour's son, G.B., causing bruising. Furthermore, she made P.S. feel unsafe in the home of the father.

Although the mother may be able to parent a different child that does not have the same behavioral problems as P.S., in this case we must consider the unique characteristics of P.S. P.S. has documented behavioral problems associated with contact with the mother. The child stated that when the mother yelled at her, she became nervous and sad, and her emotional state resulted in

physical problems. The effect of the mother's behaviors on the child was clear, as the child exhibited physical symptoms including stomach aches preceding visitation and fecal incontinence. A physician reported, "Suspect that fecal incontinence is behavioral given normal abdominal exam today."

We conclude there is convincing evidence in the record to show the child cannot be safely returned to the mother's care.

The mother also claims the juvenile court should have given her additional time to work on reunification with the child. Section 232.104(2)(b) permits the court to grant a parent an additional six months to engage in services. An extension of time may be granted based on a "determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

The juvenile court stated, "The timeline prepared by [DHS] well documents the mother's refusal to benefit from family-centered services that have been provided to her." The court also stated the mother "refuses to learn from the information being shared with her." The evidence shows it is not likely the child could be returned to the mother's care within six months. *See id.*; *In re L.H.*, 949 N.W.2d 268, 272 (Iowa Ct. App. 2020) (finding a six-month extension was not warranted because the parent "made little to no progress during the course of the CINA proceedings"). We find it would not be in the child's best interests to give the mother additional time to work on reunification.

We affirm the decision of the juvenile court.

**AFFIRMED.**