# IN THE COURT OF APPEALS OF IOWA

No. 23-0783
Filed July 13, 2023

IN THE INTEREST OF Y.R.,
Minor Child,

M.R., Mother,
Appellant.
_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Lynn Vogan of the Juvenile Public Defender, Des Moines, attorney for appellant mother.

Cathleen J. Siebrecht of Siebrecht Law Firm, Pleasant Hill, guardian ad litem for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Barbara Davis of Barbara Durden Davis, P.C., West Des Moines, attorney and guardian ad litem for minor child.

Scott Bandstra of The Bandstra Law Firm PC, Des Moines, for intervenors M.A. and J.A.

Considered by Ahlers, P.J., Chicchelly, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**SCOTT, Senior Judge.**

The mother appeals the termination of her parental rights to Y.R. pursuant to Iowa Code section 232.116(1)(h) (2022). Under section 232.116(1)(h), the court may terminate a parent's rights when there is clear and convincing evidence the child is three years of age or younger, has been adjudicated a child in need of assistance (CINA), has been removed from the parent's physical custody for at least six of the last twelve months without a trial period at home longer than thirty days, and there is clear and convincing evidence the child could not be returned to the home at the present time. There is no dispute that Y.R. is three years of age or younger, has been adjudicated a CINA, and has been out of parental care for the requisite period. *See* Iowa Code § 232.116(1)(h)(1)-(3). But the mother claims the State failed to make "specialized reasonable efforts" and, thus, there is insufficient proof to support termination or conclude termination of her rights is in the child's best interest.

"We review proceedings to terminate parental rights de novo. We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) (internal quotation marks and citations omitted).

In *In re G.J.*, No. 19-0282, 2019 WL 1934003, at *3–5 (Iowa Ct. App. May 1, 2019), a parent raised the issue of reasonable accommodations under the American with Disabilities Act (ADA). In that case, we noted, "The purpose underlying the reasonable-efforts requirement is to help the parent to make the changes necessary for the child to return." *G.J.*, 2019 WL 1934003, at *3. There, the mother argued she was denied reasonable effort accommodations—"picture

books to help her comprehend the parenting curriculum, the provision of an alert system for when the child cries, an 'appropriate' psychological evaluator, and providing adequate communications." *Id.* at *4. We concluded:

> We find [the department of human services[1]] made reasonable efforts to facilitate the reunification of the mother and the child. [H]HS provided reasonable accommodations in compliance with the ADA to the extent possible given the mother's refusal to actively participate in ordered services. The mother has failed to show she requested a reasonable service that was not offered to her. [H]HS can offer the services, but the parent must make the effort if the services are to remedy deficiencies and help return the child to the home.

*Id.* at *5.

Here, the mother asserts, "The case turns on whether, due to the lack of reasonable effort provided, the [S]tate has proven that the child cannot be safely returned to the parent's care at this time." The only deficiency in service the mother identifies on appeal is not a service to be provided to her; rather, she asserts HHS did not consistently provide language interpreters to her *parents*.[2] The juvenile court addressed this claim in its October 2022 permanency order:

> [The mother] speaks English fluently and does not need interpretation services.
> Counsel raises the issues of whether interpretation services have been provided at [the mother]'s professionally supervised visits with [Y.R.] when [the mother]'s parents attend.
> On February 1, 2022, the court ordered as follows: "[H]HS shall explore options for bilingual FCS and Safe Care services for this family; and alternatively, all providers shall use interpretation services during interactions with [the mother]'s parents including

---

[1] The agency is now the Iowa Department of Health and Human Services (HHS).

[2] To the extent she asserts these claims for her parents—who were allowed to intervene in the juvenile proceedings—she has no standing to make claims for them. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) ("[The father] did not have standing to assert that argument on [the mother's] behalf in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of *his* parental rights.").

visits when [the mother]'s parents are present and Safe Care. [H]HS shall engage the grandparents in visits with [Y.R.] to explain safety concerns and provide education. *[H]HS shall use these services to make efforts toward concurrent planning of placement of [Y.R.] with a family member."* It is necessary to consider the family circumstances in February, 2022, and the full context of that order.

As of the February 1, 2022 hearing, [Y.R.] was in foster care. [The mother] was living with her parents. Reunification at that time would include [the mother] living with her parents, and her parents being involved in caring for [Y.R.]. Alternatively, relative placements such as [the mother]'s parents would be considered. Neither [the mother] nor her parents were able to safely care for [Y.R.] at that time. It was reasonable at that time for FCS services and Safe Care services to include education for [the mother]'s parents to understand [the mother]'s abilities and how to support her parenting, or fill in where [the mother]'s parenting was inadequate. These measures would support reunification or, alternatively, relative placement. The purpose was not for [the mother]'s parents to act as interpreters for [the mother]. The court wrote "The situation is atypical in that [the mother]'s parents are acting as caregivers for [the mother] and also learning to act as simultaneous caregivers for [Y.R.], and services must be tailored to meet the family's circumstances."

The family's circumstances are different now. [Y.R.] is in relative care. [Y.R.] was placed in relative placement in April, 2022. [The mother] lives with her brother. [The mother] moved in with her brother in mid-July, 2022 by her and her family's own choosing. Reunification with [the mother] would no longer include [the mother]'s parents living with [the mother] and [Y.R.] [H]HS is under no obligation to make efforts to place [Y.R.] with [the mother]'s parents. A review hearing was held in April, 2022 and the court found that reasonable efforts had been provided toward reunification.

The mother did not appeal the October 2022 permanency order.[3] *See In re*

*D.S.*, 563 N.W.2d 12, 15 (Iowa Ct. App. 1997) (noting principles of res judicata

---

[3] We note our supreme court has held:

> [H]HS's obligation to provide reasonable efforts until a final written termination order does not necessarily require [H]HS to provide reasonable efforts toward *reunification*. The legislature instructed that "the paramount concern[s] in making reasonable efforts" are "[a] child's health and safety." Iowa Code § 232.102(10)(a). Where it is inappropriate to return a child to the family home, the legislature specified that "reasonable efforts shall include the efforts made in a timely manner to finalize a permanency plan for the child." *Id.* "If it

preclude the court from relitigating issues that have already been decided and reiterating the parent's obligation to timely challenge the services offered).

The juvenile court's termination order noted the services the mother was provided, including supervised visits with parenting training, mental-health care, parenting evaluation, and Integrated Health Home (IHH) services. The court also noted the mother's failure to engage with a number of the services:

> [The mother] continues to be unable to respond to [Y.R.]'s cues and continues to show a lack of connection to and interest in [Y.R.] [The mother] is not willing to participate in additional services, such as IHH. [The mother] is not interested in fully participating in the services that are offered such as supervised visits where she would have additional support and instruction about parenting. [The mother]'s insight into her mental health needs and mental health care is limited, as shown by her uncertainty about her need for mental health care. [The mother]'s mental health has improved since the winter for 2021/2022, but only to the extent that she is better able to take care of herself.
> No specific services were requested to address [the mother]'s disability—her mental illness. [She] was provided services to address her mental health. [She] was also provided parenting education through FCS and a parenting assessment. There was no evidence how a different service to accommodate [her] disability would have changed the outcome.

We conclude HHS offered reasonable services designed to address the concerns that resulted in the removal of the child. *See G.J.*, 2019 WL 1934003, at *4. The mother is unable to meet the child's basic needs without prompting and cues from others and thus the child cannot safely be returned to her custody.

---

has been determined that the child cannot return to the child's home," the child's "case permanency plan" must include "documentation of the steps taken to make and finalize an adoption or other permanent placement." *Id.* § 232.2(4)(j). Therefore, the statute provides for situations in which reunification need not be a goal or component of [H]HS's reasonable efforts.

*In re L.T.*, 924 N.W.2d 521, 528–29 (Iowa 2019) (third and fourth alterations in original).

There is clear and convincing evidence to support termination of the mother's parental rights.

Because a statutory ground for termination exists, we must next determine whether termination is in the child's best interests. *A.B.*, 815 N.W.2d at 776. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see In re J.E.,* 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (stating that a child's safety and the child's need for a permanent home are the "defining elements" in determining a child's best interests).

The mother's guardian ad litem argued Y.R.'s best interests would be served by allowing the child to remain in her current placement with a relative under a guardianship. Although transfer of guardianship and custody to a suitable person or an adult relative is a permanency option, Iowa Code section 232.104(4)(a) requires a showing by convincing evidence that termination would be contrary to the child's best interests. And our courts have noted "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). Here, the juvenile court rejected guardianship:

> A guardianship is not in [Y.R.]'s best interest. [Y.R.] is only one year old. A guardianship does not provide the same level of permanency as termination of parental rights and adoption as a guardianship can be litigated repeatedly and even terminated. [Y.R.] deserves to have the chance to be adopted and have permanent parents and stability for the rest of her childhood.

*Accord In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2019) (discussing age of child, guardianship, and lack of permanency). The child is in a stable and suitable pre-

adoptive placement with relatives. Termination of the mother's parental rights and adoption will best further the child's long-term nurturing and growth.

There is no permissive factor in Iowa Code section 232.116(3) applicable here. We affirm the termination of the mother's parental rights.

**AFFIRMED.**