# IN THE COURT OF APPEALS OF IOWA

No. 23-0930
Filed August 9, 2023

**IN THE INTEREST OF L.G., A.M.-G., and Z.G.,**
**Minor Children,**

**K.G., Mother,**
    Appellant.
_____

    Appeal from the Iowa District Court for Woodbury County, Mark C. Cord,

District Associate Judge.


    A mother appeals the termination of her parental rights to three children.

**AFFIRMED.**


    Timothy A. Scherle, Sioux City, for appellant mother.

    Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

    Michelle M. Hynes of Juvenile Law Center, Sioux City, attorney and

guardian ad litem for minor children.


    Considered by Tabor, P.J., Buller, J., and Doyle, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**BULLER, Judge.**

The mother appeals termination of her parental rights to three children: L.G. (born 2021), A.M.-G. (born 2020), and Z.G. (born 2019). Assessments and investigations of the mother conducted by the Iowa Department of Health and Human Services (HHS) and law enforcement documented intellectual deficits, mental-health problems, substance-abuse issues, and threatening behavior that continued through the time of termination.

The mother's mental-health problems coexist with an intellectual disability. An evaluator scored the mother with an IQ of approximately sixty-five. Treatment records show obsessive and paranoid behaviors; anxiety; auditory hallucinations, such as hearing voices; and several mental-disorder diagnoses, such as an unspecified anxiety disorder, a mild intellectual disability, and rule-out diagnoses of bipolar and schizoaffective disorders. The mother's treatment of her issues, through medication or therapy, has been inconsistent at best, and her temper has flared frequently. As explained by the psychologist in his report, the mother's "history, intellectual/cognitive deficits, and poor treatment compliance/engagement regarding psychological functioning indicate[] noteworthy risks regarding her sustained parenting abilities."

The mother also has significant problems with alcohol and controlled substances. She self-reported heavy alcohol use as recently as one month before the termination trial, when she found out she was again pregnant, and methamphetamine use as recently as six months before termination. She also admitted to not disclosing methamphetamine use to her treatment providers.

The mother has a significant record of contact with law enforcement and local hospitals, including conflict with paramours, threats toward herself and others, and threats to harm her children. In 2022 alone, the mother presented at the hospital about ten times, complaining her thyroid was in the wrong place and some type of medication was needed to move it back to the right location. She admitted her "schizophrenia ha[d] gotten really bad" and she was hearing voices that expressed jealousy. She admitted to wanting to hurt people, including her children, and she admitted to throwing one of the children (then approximately nine months old). A mental-health-commitment petition was filed concerning the mother, and she was temporarily committed on the basis of homicidal and suicidal ideation (related to the children being taken away and otherwise). During an emergency mental-health evaluation, the mother became so threatening that three security staff and a nurse were necessary to hold the mother down and prevent her from attacking a caseworker.

Throughout the case, the mother was generally uncooperative with HHS in providing authorization for the children's medical treatment. She also failed to meaningfully engage with services, including but not limited to providers who worked directly with the children. She actively interfered with the provision of services (like physical therapy) for the children by picking the children up or refusing to let providers work with them. She never progressed beyond supervised visits.

In late 2022, the mother continued to fixate and engage in paranoid behaviors, referring to the police and court system as "fake." Despite only attending one therapy appointment, she reported that she had "no needs" that

could be met by services. One night, she text-messaged the HHS case manager ninety-eight times and left multiple voice mails. In November 2022, the mother made a report to the police about a prescription pill bottle in her possession that turned out to contain apparent methamphetamine residue. She then presented at the hospital claiming she had been poisoned, only to test positive for methamphetamine and amphetamines. The mother reported she was glad she tested positive for methamphetamine instead of poison.

In April 2023, the mother made more concerning and threatening statements. She reported attempting to get pregnant because she did not believe the children at issue in this case would be returned to her. She explained that if the children were not returned, "she is going to go after a lot of people because of everyone who tried to kill her." And she described how she believed HHS workers, ambulance drivers, hospital personnel, and others had been trying to kill her, as detailed in several inflammatory and threatening posts on social media.

As of the termination trial, the mother was unemployed and lacked transportation. One or more of the children required ongoing medical visits in a major city, which the mother was unable to facilitate. Providers also observed the children were not adequately clothed during visits, although the record does not definitively establish whether the failure to provide for the children was due to financial constraints or the mother's other longstanding deficits. That said, the mother had significant income from a tax refund and stimulus payments (some $10,000 or more) and appears to have not spent any of that amount on the children.

Since removal, the children are doing well in their placements. Service providers report two of the children are "totally different kids" out of the mother's care, now meeting developmental milestones. Each of the children have some degree of mental- and physical-health issues that will require long-term monitoring, but these issues appear reasonably well-managed at present.

After a contested trial, the juvenile court terminated the mother's parental rights to all three children. The mother appeals, challenging one of the statutory grounds for termination for each child. The children's guardian ad litem (GAL) filed a response to the mother's petition on appeal, and the State filed a notice of joinder.[1] On our de novo review, *see In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022), we reject the mother's arguments and affirm.

First, as to Z.G., the mother challenges only whether the State met its burden to prove that the child could not be returned to the mother at the time of the termination hearing, as required by Iowa Code section 232.116(1)(f) (2023). *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("[A]t the present time" means "the

---

[1] We note that the GAL's response refers to the record solely by use of the new docket-numbering system implemented in June of this year. Although the rules of appellate procedure do not currently authorize citation by docket number, they do not forbid it either. If parties wish to rely on docket-number citations, we request they identify the name of the underlying record item and a page number, as required by Iowa Rule of Appellate Procedure 6.904(4) (for example, "D0002, Petition, p. 2"). In a case with multiple underlying files (like this termination appeal), we also ask that parties relying on a docket number include the case number to ensure we can find the referenced materials. For example, "D0002" tells us to look for the second docket event, but it does not tell us which of the three children's termination-of-parental-rights or child-in-need-of-assistance files to open. A citation to "D0002, JVJV####, Petition, p. 3" would be sufficient for us to find the record quickly and comply with existing rule 6.904(4). We anticipate detailed rules addressing citations using docket numbers will eventually be implemented by the supreme court.

time of the termination hearing."). We agree with the juvenile court that the State met its burden. The mother's mental-health and substance-abuse problems have not been adequately addressed, her threatening behavior coupled with homicidal and suicidal ideation reflects an ongoing danger to the children, and she is unable to provide a safe and stable home. Our case law instructs that, while an intellectual deficit alone is not grounds for termination, we must consider such deficits "in determining whether the child is neglected to the point at which termination is necessary to serve the child's best interests." *In re A.M.S.*, 419 N.W.2d 723, 733–34 (Iowa 1988) (citation and quotation marks omitted). We are also mindful that the mother had not progressed beyond supervised visits, which leaves little reason to believe the children could be safely returned. In short, we agree with the juvenile court's observation that the mother is "not able to care for herself yet, let alone her children in a safe environment."

Second, as to L.G. and A.M.-G, the mother again challenges only whether the children could be safely returned, as required by section 232.116(1)(h). We again agree with the juvenile court that the State met its burden, for largely the same reasons. We also note that the mother's track record makes clear she cannot adequately care for the medical needs of these two children in particular, as evidenced by her interference with physical therapy.

Third and finally, the mother urges she should have received an additional six-month extension of time to work toward reunification. *See* Iowa Code § 232.104(2)(b). We agree with the GAL that this claim was not adequately preserved, as the mother did not appeal the permanency order and did not renew the request for more time at the termination trial. *See In re M.L.*, No. 21-0511,

2021 WL 2453983, at *3 (Iowa Ct. App. June 16, 2021) (citing *In re D.S.*, 563 N.W.2d 12, 15 (Iowa Ct. App. 1997)). Even if we could reach this issue, we would not find an extension warranted. The combination of the mother's mental-health issues, ongoing drug addiction, and unwillingness to meaningfully engage with any services convinces us she would have been no more able to care for the children after six months than the date of the termination trial.

We reject the mother's arguments and affirm the juvenile court.

**AFFIRMED.**