**IN THE COURT OF APPEALS OF IOWA**

No. 24-2045
Filed April 9, 2025

**IN THE INTEREST OF I.D.,**
**Minor Child,**

**I.O., Mother,**
　　　Appellant.
_____

　　Appeal from the Iowa District Court for Black Hawk County, Michelle Jungers, Judge.

　　A mother appeals the termination of her parental rights to her teenage son. **AFFIRMED.**

　　Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant mother.

　　Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

　　Tammy L. Banning of Waterloo Juvenile Public Defender Office, Waterloo, attorney and guardian ad litem for minor child.

　　Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**TABOR, Chief Judge.**

A mother appeals the termination of her parental rights to her thirteen-year-old son, I.D., challenging the statutory ground for termination, asserting termination of their bond would harm him, and suggesting the court establish a guardianship rather than severing her rights.[1]  Examining the record with fresh eyes,[2] we find termination was appropriate because of the mother's ongoing mental-health struggles.  The mother didn't show that termination of the relationship would harm I.D.  And she did not ask the juvenile court to establish a guardianship, nor is one appropriate.  So we affirm.

## I.      Facts and Prior Proceedings

The juvenile court first removed I.D. from his mother, I.O., in the summer of 2023 when she demonstrated irrational thinking and paranoid delusions.  In its adjudication order, the court found her mental-health condition put the child in danger of harm from emotional abuse, lack of supervision, and threats of physical harm.  A child abuse report for denial of critical care and failure to provide proper supervision was founded.  The Iowa Department of Health and Human Services placed I.D. with a foster family, where he remained throughout the proceedings.

The mother told the department that she had been diagnosed with schizophrenia but disagreed that she suffered from that condition.  She attended group mental-health meetings and received diagnoses of depression and anxiety.

---

[1] The juvenile court also terminated the rights of I.D.'s father, who last saw I.D. when he was a baby.  That parent is not involved in this appeal.

[2] "We review termination proceedings de novo, examining both the facts and law and adjudicating anew those issues properly preserved and presented." *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019).  The juvenile court's factual findings do not bind us, but we give them weight, especially on witness credibility.  *Id.*

She also started taking medication for anxiety and participated in medication management with a doctor. Throughout the case, she had several jobs and reported that she enjoyed working. She also found an apartment that the department agreed would be appropriate for I.D.

Beyond those actions, the mother maintained sporadic contact with the department and services throughout the case. She had only one visit with I.D. during which she grew angry with the supervisor, escalating the situation until the supervisor had to lock herself and the child in her car and call the police. After that, I.D. consistently said that he did not want in-person interactions with his mother. Thus, despite medication and mental-health treatment, concerns about I.O.'s mental health persisted. She was ordered to get a psychological evaluation but never did so. And she still held paranoid and irrational beliefs.

In December 2024, the court held a termination hearing. The department social worker and case manager described I.O.'s persistent, detailed, and disturbing delusions about I.D., the foster family, the department, her relatives, and others.[3] I.O. also testified, repeating many of these paranoid and irrational beliefs and insisting that they are true. She also reported going to the hospital for several days the previous August because of other delusions.

Meanwhile, I.D.'s guardian ad litem said: "He is a great kid." His therapist reported improvements in his mental health since his placement in foster care. I.D. feels safe and happy with his foster parents and is close with his foster siblings.

---

[3] I.D.'s guardian ad litem reported that he is unaware of many delusions his mother holds about him and would be "devastated" to hear them.

He declines in-person contact with his mother and wants to stay with the foster family, who is a concurrent placement for adoption.

The juvenile court terminated I.O.'s parental rights under Iowa Code section 232.116(1)(f) (2024). She appeals.

## II. Discussion

"Terminations follow a three-step analysis." *A.R.*, 932 N.W.2d at 591. First, we determine whether the State met the statutory grounds; then we consider if termination is in the child's best interests; and, finally, we decide whether circumstances warrant applying a statutory exception. *See id.* The mother raises challenges at the first and third steps. And she suggests a guardianship rather than termination.

### A. Statutory Ground for Termination

First, I.O. argues that the State failed to prove the statutory ground for termination under section 232.116(1)(f). In her petition on appeal, she asserts the State did not offer clear and convincing evidence of subparagraph (), that the child cannot be returned to her custody at the present time. Iowa Code § 232.116(1)(f)(4); *see In re M.H.*, 12 N.W.3d 159, 161 (Iowa Ct. App. 2024) (interpreting "at the present time" to mean at the time of the termination trial). She argues that she has maintained employment, has safe and stable housing, takes her medications, and has been engaging in mental-health services.

True, I.O. has taken some positive steps. But despite an outward appearance of stability, she continues to hold bizarre beliefs about her son. Those delusions have caused her son psychological harm, though he is processing his trauma with his therapist. I.O. failed to obtain an evaluation to determine whether

treatment could help address her delusions. She rejects her diagnosis of schizophrenia. And she denies that her bizarre beliefs are delusions or hallucinations. Given the persistence of her mental-health impairment and the trauma it has caused I.D., we agree with the juvenile court that he cannot safely return to the mother's custody at the present time.

## B. Statutory Exception

Next, I.O. argues that severing her relationship with her son would harm him and suggests the court should apply a statutory exception.[4] *See* Iowa Code § 232.116(3) (providing the court may bypass termination on clear and convincing evidence it "would be detrimental . . . due to the closeness of the parent-child relationship"). It is the parent's burden to prove a statutory exception applies. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

In deciding whether I.O. has met that burden, we focus on whether I.D. will be harmed by termination and whether that harm overpowers his mother's inability to provide for his developing needs. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). To that end, I.O. and I.D. participated in a child-parent relationship assessment six months before the termination hearing. A licensed social worker reported that the mother and son do not have a secure bond. I.O. is paranoid and distrusting of her son, and I.D. feels unsafe and insecure in their relationship.

If anything, their relationship has deteriorated since then. I.D. remains adamant that he does not want to visit I.O. and desires to stay with the foster family.

---

[4] The State generously reads I.O.'s petition on appeal to include a best-interests argument under Iowa Code section 232.116(2). But I.O. does not cite that section in her petition on appeal, nor does she address the standards set out in that provision. So we do not address that step of the termination process.

I.O. asserts that I.D. encourages her to seek services, trust her case workers, and make progress in this child-welfare proceeding. But that argument suggests the mother needs the child rather than the child needing the mother. No doubt, I.D. cares about his mother's wellbeing. But she has not met her burden to show that termination of her rights would harm him.

### C. Guardianship

Finally, I.O. suggests that placing I.D. in a guardianship would be preferable to terminating her parental rights. But we cannot find any request for a guardianship in the record. Thus, she failed to preserve this argument for appeal. *See In re A.B.*, 815 N.W.2d, 764, 773 (Iowa 2012). Even if she had raised the issue in the juvenile court, a delay of permanency—with no potential guardian yet identified—would not serve I.D.'s best interests. *See In re D.S.*, 563 N.W.2d 12, 14–15 (Iowa Ct. App. 1997). So we affirm the termination of her rights.

**AFFIRMED.**